The bill was filed by the plaintiff's as the next of kin of David Outlaw, deceased, alleging that he had made and published his last will and testament, which was solemnly admitted to probate, and which is as follows: *Page 65 
"It is my wish and desire, that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description.
DAVID OUTLAW.
Dec. 20th, 1848."
And that the defendant took letters of administration with the will annexed of the said estate, and as administrator took possession of all the estate of the testator, consisting of slaves and other personal property, also that he took possession of a sum of money and the evidences of debt due the testator consisting of bonds, notes, mortgages, certificates of stocks in Banking and other incorporated companies, and other choses in action, amounting to seventy-five thousand dollars.
The plaintiffs in their bill insist that, by a proper construction of the will above set out, only the tangible property passed to the defendant, and that the monies, bonds stocks, choses in action and evidences of debt were not disposed of thereby, and that the same is distributable among the plaintiffs, as the next of kin of the deceased.
The plaintiffs further allege that the debts against the estate have been paid off, and they pray that the defendant may be decreed to account and pay over to them the amount as to which (76) the said David died intestate.
The plaintiffs in their bill further allege that among the slaves bequeathed to the defendant, there were two who were to be emancipated and set free; that the said David had, in his life-time, often so declared, and that the defendant, shortly after the death of the testator, in a letter written to a friend expressly admitted this to be the wish of the deceased and therein promised to effectuate this purpose, but that since that time the defendant has made sale of one of these slaves and received the value thereof in money. They allege their willingness that this slave may still be emancipated, and that the defendant may be compelled to re-purchase him for that purpose, but they insist if this cannot be done, and this trust shall be considered by the Court as void, that he may be compelled to account for the value of these slaves to the plaintiffs. The bill also prays for general relief.
To this bill there was a demurrer, alleging grounds applicable to the several aspects of the plaintiff's claims: a joinder in demurrer, and the cause being set for argument, was transmitted to this Court by consent.
An attentive consideration of the arguments of the counsel on both sides, and an examination of the authorities on which they *Page 66 
respectively rely, have satisfied us that the demurrer is well founded, and that the bill must be dismissed.
In support of the construction of the will of David Outlaw, for which the plaintiff's counsel contends, he relies mainly, if not altogether, upon the case of Pippin v. Ellison, 34 N.C. 61, recently decided in this court. The question in that case, arose upon the construction of the following clause in the will of John Wyatt: "I give and bequeath to Lydia Wyatt, all the balance of my property during her natural life, and at her death it is my will and desire, that the said property loaned to my said wife, shall be sold by my executor, with the exception of one acre of land, and the money, arising from the sale of said property, (77) to remain in the possession of my executor, in trust for the benefit of my daughter, Keziah Roby," etc. The Court said: "the question is whether the bonds, accounts and other choses in action
passed under the above clause, or were undisposed of and subject to distribution? The word "estate" has a broader signification than the word property: The former includes choses in action: The latter does not: and in reference to personalty, is confined to "goods": which term embraces things inanimate — furniture, farming utensils, corn, etc. and"chattels," which term embraces living things — slaves, horses, cattle, hogs, etc. Nothing but personal property, or goods and chattels, could, at common law, be seized under a fi. fa., or be the subject of larceny.
As the testator uses the word "property," choses in action are excluded, taking the word to have been used in its legal sense; and that such was his meaning, is made still more manifest by the direction that all said property, at the death of his wife, shall be sold, and the moneys arising from the sale, applied," etc.
The counsel for the defendant, contend that the restricted meaning which the Court applied to the word "property," was not necessary to the decision of the cause, as is apparent in the opinion itself; and therefore the case is not to be so highly regarded, as an authority as a direct adjudication upon the very point would have been. The counsel then referred to several dictionaries and the text writers, and cited many cases to show that the word "property" has a much broader signification than was assigned to it by the Court in Pippin v. Ellison. "wines and property in England" passed the testators property in Eng-365, (8 con. ch. Rep. 36) in which it was held
that a bequest of his Among these cases was that of Arnold v. Arnold, 2 Mylne and Keene land of every description, including money in the funds, and at his banker's debts, and arrears of a pension due to him, and was not confined to the property ejusdem generis with wines, as had been contended for by counsel. In delivering his opinion, the Master of the Rolls, Sir *Page 67 
CHRISTOPHER PEPY, (who was afterwards Lord Chancellor COTTENHAM) said, among other things, "the gift of the wines would not be limited by the occurrence of the subsequent word "property," which, be it observed, is as large and comprehensive a term as (78) can possibly be used."
We do not feel ourselves called upon, in this case, to decide what is the true meaning of the term "property," when used by a testator without any expression in the context to restrict, or extend or in any way to modify it, because we all think, that in the will under consideration, the words "all my property of every description" were intended to convey every thing of which the testator had the right to dispose. His purpose was to make his friend and relative, Dr. Joseph B. Outlaw, his "universal legatee," giving to him whatever things he owned, whether real, personal or mixed, and whether in possession or in action. Nothing less will satisfy the broad terms used, "all my property of every description."
The first part of the demurrer must, therefore, be sustained.
Our opinion upon the question raised upon the second part of the demurrer, is equally against the plaintiffs. They have no such interest in the emancipation of the slaves mentioned in the bill, as will sustain a suit for that purpose in their names. Whether the emancipation of slaves, directed in a will or assumed upon a secret trust, is such a public charity as will be enforced by a proceeding in the name of the Attorney General of the State, or whether it is a right which the slaves themselves can enforce, by a suit, are interesting questions which the present pleadings do not make it our duty to decide.
It is quite certain that the plaintiffs cannot enterfere in their own names. Had they charged as a fact, in their bill, that the defendant had taken the slaves upon a secret trust to permit them to remain in the State, nominally as slaves, but really as free persons, then the bequest, if the charge were true, would have been void, and the plaintiffs would have had such an interest in the slaves as would have entitled them to an answer from the defendant. But no such allegation is to be found in the bill. The only charge, on the subject of emancipation is of such a trust as we have already said, the plaintiffs have no right to enforce. In the case of Thomson v. Newlin, 41 N.C. 384, the Court say, with regard to such a trust, that the right of the next of kin would seem to be extinguished, "for it does not belong to them to enforce it, nor (79) does the breach of it work an injury to them, but only to the negroes or the State."
But it is argued for the plaintiffs, that they have a right to an answer from the defendant to ascertain the nature of the trust, so as to see *Page 68 
whether it is a void one or not: That might be so were there any allegation of any state of facts that would make the trust void. But such is not the case, and for that reason the second part of the demurrer must also be sustained: the result of which is, that the bill must be dismissed with costs.