Josiah Atkins, the elder, after devising to his wife (269) an estate for life in his land, and giving some specific legacies to *Page 167 
her and to two of his daughters, bequeathed to his two granddaughters, Elizabeth Atkins and Sarah Atkins, $5 each, and then added the following residuary clause: "My desire is that all the property that I have not willed away shall be sold after my death and equally divided between my six children, Josiah Atkins, William S. Atkins, James H. Atkins, Lucinda Burroughs, Martha Atkins, and Ann Eliza Atkins, so as to make each share equal." The feme lessor of the plaintiff is one of the granddaughters mentioned in the will as a legatee of $5, and claims that the reversion in the land given to her grandmother for life did not pass by the residuary clause of her grandfather's will, and that she is entitled, since the death of the tenant for life, to a share thereof, as one of the heirs at law of the devisor. The question is, whether her claim is well founded, and we are decidedly of opinion that it is not. In 6 Cruise's Dig., Tit. 38, ch. 10, sec. 117 (see 3 Green. Cruise, p. 251), it is said that "with respect to the words necessary to pass estates in reversion, wherever a testator shows an intention to dispose of all his property by his will, and uses words sufficient for that purpose, any estates to which he is entitled in reversion will pass." Thus the words, "the rest of my lands in Somersetshire, or elsewhere, I give to my brother," "all my lands not settled or devised" I give to T. K. and his heirs, "all my lands not before devised" to be sold and the money divided among my younger children, were in different cases held to pass the reversions which the devisors had in the lands. See, also, 1 Jarman on Wills, 591. That the words "all my property" are as effective to pass reversions as the words "all my lands" cannot be doubted. See Hurdle v. Outlaw,55 N.C. 75. It is true that where the devisor manifests an intention that his reversion in land shall not pass by general words, then a different construction shall prevail. 6 Cruise's Dig., Tit. 38, ch. 10, sec. 129 (see 3 Green. Cruise, p. 255). Thus is Harris v. Mills, 4 (270) N.C. 149, where a testator, after giving a tract of land to his son B. for life, by another clause of his will devised thus, "I give and bequeath to my son B. and my four daughters all the rest of my estate, consisting of various articles too tedious to mention," it was held that the reversion in the land did not pass to B. and the daughters under the residuary clause, but descended to the heir at law, though there was a bequest in the will giving him twelve shillings. It seemed to be taken for granted by the Court that the words, "all the rest of my estate," would have been sufficient to have embraced the reversion in the land had there been no explanatory words annexed to them. But, say the Court, the testator undertook to specify the estate to be given away, to wit, that it consisted of various articles too tedious to mention. "Thus the terms, as well as the description of them, are strictly referable to personal property. No person would understand the word `article' as *Page 168 
relating to land; nor would it be tedious to mention a reversion, although it would have been so to enumerate the great variety of articles of which chattel property usually consists." This case, thus explained, is not in opposition to the general rule, but virtually admits and sustains it.
In the language of the will now before us, we are unable to discover any intention of the testator not to dispose of the reversion in the land which he had given to his wife for life. The words "all the property that I have not willed away" are, beyond all doubt, sufficient to embrace the reversion in the land, and it does not appear from the will, nor has it been shown from any extraneous proof, that the testator owned any property, either real or personal, of much value besides such reversion. The only circumstance relied upon to show that the testator did not intend to include the reversion in the residuary clause, which is, (271) that he directed a sale of the property after his death, does not, in our opinion, support the conclusion attempted to be drawn from it. It is contended that "after his death" means "at" or "immediately after" that event, and that the testator could not have wished the reversion to be sold as such in the lifetime of his widow. The reply is that though the words "after his death" may have in law the meaning attached to them in the argument, it may be that the testator did not know it, or at least advert to it, at the time he penned the clause; and further, that if he did, the inconvenience of a sale of the reversion is too slight a circumstance to control the meaning of the strong language, that all the property which he had not willed away should be sold and equally divided among his six sons and daughters.
There can be no doubt that the reversion of the land descended to the heirs at law until the sale. This was so, whether the sale was to be made by the heirs or by the executor, for he could at best have but a naked power. If this point, taken for the first time in this Court, had been insisted upon, it would have prevented the Court from deciding the very question for which the suit was instituted. But, as we understand that, upon the engagement of the defendant's counsel to pay all the costs of the suit, the objection is withdrawn, we must affirm the judgment given in the court below, upon the only question which was presented to the judge presiding therein.
PER CURIAM. Affirmed.
Cited: Foil v. Newsome, 138 N.C. 123. *Page 169