Hah., Judge.
 

 On the argument of this case, an objection was made, because
 
 Francis Speight’s
 
 representative- was not a party. But upon an inspection of the
 
 *8
 
 record it appears, that after the death of
 
 Henry
 
 Speight, administrator of
 
 Frauds Speight,
 
 letters of administration
 
 de bonis non
 
 were granted to
 
 Thomas
 
 Sanders, and the suit has been revived against him.
 

 The first question upon the merits of the case is, whether the property in dispute passed hy the residuary clause of
 
 Joseph Speight’s
 
 will, to
 
 Frauds
 
 and
 
 Henry Speight.
 
 In the first clause the testator “lends unto my beloved wife
 
 Ann Speight, during her natural life,
 
 one half of the land and plantation whereon I now live, with one half of the improvements thereon; also five negroes, Jenny.
 
 Henry, Stephen,Rose,
 
 and
 
 Pris,”
 
 with various other articles. In a subsequent clause ho says,
 
 “
 
 I give and bequeath unto my beloved wife
 
 Ann Speight
 
 my riding chair and harness,
 
 to her 'and her heirs forever.”
 
 It is observable, that in all the other clauses where the test..tor gives property, he uses the same words of limi tation, “
 
 to them
 
 and their heirs forever.” This is pretty satisfactory proof, that the negroes given to
 
 Ann
 
 were, like the land, given to her for life, and so far the remainder in them is undisposed of. The testator in a subsequent clause gives to his grandson
 
 Joseph Freeman
 
 twelve shillings, in full of his part of the estate, to him and his heirs forever. He does the same to
 
 John Freeman
 
 and
 
 David Freeman.
 
 He also gives to his granddaughter
 
 Ann Freeman
 
 one negro named
 
 Luke,
 
 to her and her heirs forever, in full of her part of his estate. It is pretty clear, that the testator did not intend that these last legatees should have any interest in the remainder of the negroes, given to his wife
 
 Ann
 
 for life. Nor can it be supposed, that he intended, as to that property, to die intestate. But I am of opinion, that it passed to
 
 Henry
 
 and
 
 Frauds Speight
 
 under the following residuary clause: “It is my will and desire, that all the remainder of oy estate, of every nature and kind whatsoever, shall fee :• old, and nine months credit given to the purchasers; the money arising therefrom to go to pay all my just debts aiiisi funeral
 
 charges;
 
 and if there should be any remainder, for it to be equally divided between rny two sons,
 
 Francis Spdght
 
 and
 
 Henry Speight,
 
 to them and
 
 *9
 
 their heirs forever.” This clause is sufficiently comprehensive to embrace it.
 

 daves,'honestly made by an exe-wKmgprmcSplet may be set aside upon the bill or a legatee, who ^ ignorance of his ri£hts-
 

 It is argued, that it is incredible that he intended the remainder in those slaves should be sold to pay his debts. I answer, that whether he intended it or not, he certainly subjected that interest to the payment of his debts ; and his executors (who were
 
 Francis
 
 and
 
 Henry Speight)
 
 might sell it if they pleased. And if they paid the debts, they need not sell any of it. It was given to them, subject to the payment of the debts, and until it was exhausted, no other legacy could be touched for that purpose. I therefore conclude, that the property in question devolved upon, and became vested in
 
 Francis
 
 and
 
 Henry Speight,
 
 by the residuary clause in the will of their father,
 
 Joseph Speight.
 
 But it is stated, and relied upon, that the division was made amongst the four children of the testator by consent. This allegation. I think, has not been established. No doubt
 
 James Gatling
 
 acted honestly in making the division, and that he made it under legal advice. And this might have ° . Leen tlic means, in some measure, of silencing tlic claimants, who were probably ignorant of their rights. The testimony of
 
 John Gatling
 
 and
 
 William Gatling
 
 would seem to show, that the division was made by con
 
 sent",
 
 but the testimony of
 
 Lewis Eure
 
 and
 
 Hillory Wil-ley,
 
 who were the commissioners that made the division, clearly prove that some of the plaintiffs were dissatisfied with
 
 it;
 
 and if others were silent, it might be and probably was, that they were ignorant of their rights. I therefore cannot consider the division to be a bar to the plaintiff’s rights under the will.
 

 A report has been made in this case by the clerk, in which he values the negroes claimed by the plaintiff, as they were valued in the year 1819, when the division took place. He states, that no evidence was offered, either as to their present value, or as to their hire or annual value. As the plaintiff was entitled at the time tlic division took place, and as the negroes were thereby withdrawn from him, I see no objection to taking their
 
 then
 
 value.
 

 
 *10
 
 Another objection is, that part of the valuation Avas made upon a slave, that died shortly after the division. It is to be observed, that the slaves are not produced by the defendants in discharge of themselves. IftheyAvere, it would probably appear that their increase would balance that loss. Or if there Avas no increase, the hire or annual value of the negroes might exceed the interest; so far as to cover it. I therefore think, that the valuation of the slaves and property claimed by the plaintiff,. which was made at the division, should be the basis of a decree against the defendants.
 

 Per Curiam — Decree accordingly.