JOHN KENNEDY V. ADOLPH BRIERE.

1. CONFEDERATE MONEY—EXECUTOR.—An executor was authorized, by will, to administer the estate without control of the Probate Court, and specially directed to have the estate "inventoried, and to divide it equally in property or money," it being also left to his discretion to make a just and equal partition between two legatees named in the will, "either in kind or by sale, and partition of the proceeds;" under this authority the executor, in 1864, sold the property of the estate for Confederate money; in a suit by the legatees against the executor for the value of the estate: *Held*, Error to instruct the jury "that a person occupying a fiduciary relation (an executor occupies that relation) could not legally receive Confederate money in payment for property sold by such person."

2. TRUSTEE, LIABILITY OF.—If a trustee act strictly within the line of his duty, and does not exceed the limit of the discretion intrusted to him, and is guilty of no fraud, he cannot be held responsible for any loss which may occur to the trust estate by his acts.

3. MONEY.—The word money, in its most strict and technical sense, means coined metal, usually gold or silver, upon which the Government stamp has been impressed to indicate its value, but in its more popular use it imports any currency, tokens, bank notes, or other circulating medium in general use as the representative of value.

4. SAME—TRUSTEE—CONSTRUCTION.—Where a power was given to administer an estate and to divide it in property or money, in the discretion of the trustee, and the instrument conferring the power does not show in what sense the word money was used, it may be ascertained and inferred from the nature and character of the business to which it refers; the habits, usage, and general course of dealing; the situation of the country; the kind of circulating medium in ordinary use, and the sense in which the word is generally understood in business transactions at the time and in the locality where the instrument was drawn.

20

5. SAME.—It was not evidence of fraud or of gross negligence in such a trustee to take Confederate money in payment for property sold by him, and it was error in a suit calling in question his action in receiving it to instruct the jury that it was fraudulent.

6. BREACH OF TRUST.—The sale of property by such trustee, in 1864, for Confederate money, in Texas, was not of itself a breach of trust, rendering the trustee liable for the conversion of the property sold.

7. LIMITATION—TRUSTS.—An action against a trustee for a breach of his trust is within the bar of the statute of limitation. A suit for the value of property alleged to have been unlawfully disposed of by the trustee, is not a suit to enforce the trust, and it is barred by limitation.

APPEAL from Harris. Tried below before the Hon. James Masterson. The facts are stated in the opinion.

*Steward & Barziza*, for appellant, cited Hill on Trustees, pp. 335, 365, 562, 367, 373, 384; 2 Am., 570, 16 Wall., 483; 14 Wall., 661.

*W. S. Oldham*, for appellees, cited Ransom *v.* Alexander, 31 Tex., 443; Miller *v.* Lacy, 33 Tex., 351; Trammel *v.* Philleo, 33 Tex., 395; Chambers *v.* Bonner, 33 Tex., 511; Thomas *v.* Browder, 33 Tex., 783; Smith *v.* Nelson, 34 Tex., 516; Kirby *v.* Day, 35 Tex., 652; Spann *v.* Glass, 35 Tex., 761; Shepard *v.* Taylor, 35 Tex. 774.

MOORE, ASSOCIATE JUSTICE.—On the 2d of March, 1872, the appellee, Adolph De Briere, brought suit in the District Court of Harris county, against the appellant, John Kennedy, to recover the value of the property bequeathed, as is alleged, to said Kennedy, in trust for appellee, by his father, St. Aime De Briere, who died in Harris county, Texas, on the 29th of April, 1864. By this will, which was executed on the 25th of said month, four days prior to his death, the testator bequeathed to appellant, whom he also appointed his executor, all his property in trust, after the payment of his debts, for the benefit and to the use and in equal moiety of his son, Adolph De Briere, the appellee, and one Constance Julia

De Bracts; said will also contained the following provision: "I request said Kennedy to take possession of all my property, to have it inventoried, and to divide it equally, in property or money, between my said son Adolph De Briere and the said Constance Julia De Bracts. I leave to the judgment and discretion of said Kennedy the fair, just, and equal partition, either in kind or by sale and partition of the proceeds. And I dispense said Kennedy from giving any bond or taking any proceedings in the Probate Court, except the probate of this will and the filing of the inventory. I dispense him from accounting to the Probate Court, but I leave it to his discretion to have my will administered in said court or not."

Shortly after the death of the testator the will was admitted to probate, and appellant quallified as executor and returned an inventory of the estate. In September, 1864, he sold all the property of the estate, consisting of lands, negroes, and personal property of a perishable character, for Confederate treasury notes, commonly called Confederate money, one half of which, after discharging the debts of the testator, he paid to and it was received by said Constance Julia De Bracts, who resided in said Harris county, in satisfaction of the legacy to her. Appellee, it appears, resided, at the date of his father's death, in the city of Mobile, State of Alabama, but was absent from home in the Confederate army until the close of the war. It does not appear that appellant gave him any information in regard to the estate or his action in executing the trust conferred by the will; or that he sought to have appellant settle his trust or account for the bequest in the will to his use prior to the institution of this suit.

On the trial of the case the court charged the jury as follows: "That a person occupying a fiduciary relation (an executor occupies that relation) could not legally receive Confederate money in payment for property sold by such person. If defendant, John Kennedy, accepted the trust as executor of the last will and testament of St. Aime De Briere,

Opinion of the court.

he thereby became liable to account to the legatees named in the will in the proportions stated in the will."

This charge, though fully supported and justified by quite a number of decisions rendered by this court prior to the trial in the District Court, is in effect in direct conflict with its more recent decisions; and, as it may have had a controlling influence with the jury in finding the indictment, it necessarily requires a reversal of the judgment.

It was unquestionably the duty of appellant, as executor, to settle the estate of his testator and turn over the property to the legatees at as early a day as it could be done consistently with the proper discharge of his duty to all parties interested in the estate. The time and manner of doing this is, however, intrusted to his judgment and discretion to the extent of the powers conferred by the will. He was authorized by the will, and it was his duty as executor, to take possession of the property of the estate, to have it inventoried, and to divide it equally between the legatees, in property or money, as he might deem best. The fair, just, and equitable division in kind or by sale and partition of the proceeds was intrusted to his discretion; and if he has exercised the discretionary power thus conferred in good faith, without collusion or fraud, or such negligence and indifference to the interest of those for whom he is acting as to be regarded as a *quasi* fraud, he cannot be charged with a breach of trust. For though, in case of a breach of trust, the trustee must account for the property, although it is afterwards lost or destroyed by some inevitable calamity; if he acts strictly within the line of his duty, does not exceed the limit of the discretion intrusted to him, and is guilty of no fraud,—he cannot be held responsible for any loss which may occur to the trust estate. (Perry on Trusts, sec. 487.)

It cannot be denied that appellant had the power under the will to sell the property of the estate for the purpose of a partition. But it is insisted that he was only authorized to sell for money, and by selling it for Confederate treasury

notes, he exceeded the limit of the authority given him by the will, and was guilty of a breach of trust. The word "money," unquestionably, in its most strict and technical sense, means coined metal, usually gold or silver, upon which the government stamp has been impressed to indicate its value. But in general and popular use and understanding, it has a much broader meaning, and imports any current token, bank note, or other circulating medium in general use, as the measure and representative of values, which serves the purpose of coin in its absence, or in connection with it. Undoubtedly it is ordinarily used, when a power such as that intrusted to appellant is conferred, in this popular and more enlarged sense. But if the will or instrument by which the power is conferred fails to show by the context the sense in which it is used, this may be ascertained and inferred from the nature and character of the business to which it refers, the habit, usage, and general course of dealing and business of the testator, and the situation of the country, the kind of circulating medium in ordinary use, and the sense in which the word is generally understood in business transactions, and especially in reference to such as that in question, at the time, and in the locality where the instrument was drawn, and where it was contemplated it would be executed. Looking at this will in the light of these circumstances, there can be no doubt that the authority given appellant to divide the estate "in property or money," to make a fair, just, and equal partition, either in kind, or by sale and partition of proceeds, if it did not clearly authorize the sale of the property for Confederate money, it cannot be said, as matter of law, that appellant, in so selling it, was guilty of fraud or of such gross negligence as to render him liable for the value of the property to the legatees, or to warrant the court telling the jury that such a sale was of itself a breach of trust. On the contrary, as we think, the power conferred by the will is sufficiently broad and comprehensive to authorize the sale for

Confederate money.   And the action against appellant evidently cannot be maintained merely on the bare fact of the sale of the trust property for Confederate money, as the jury were in effect instructed by the court; but to do so, it must be made to appear that he exercised discretionary power conferred by the will in the manner he did from a fraudulent, selfish, or improper purpose; or, in view of the character and situation of the property, the condition of the country, the great and increasing depreciation of Confederate money, the absence of appellee, and difficulty and delay which would necessarily ensue in paying him his half of the proceeds of the sale, appellant was so wantonly and grossly careless and indifferent to his interest in so selling, and then neglecting to reinvest the proceeds of the sale in a more stable and valuable security than Confederate money, as to exhibit a total absence of discretion, which could only be regarded as tantamount to, and, in effect, a fraud.

In passing upon the questions here suggested, the supposed illegality of Confederate money, or that it was of no value, because of the absence of legal authority for its issue, must be entirely cast aside and discarded, as neither true in fact nor correct in law. (Thorington *v.* Smith, 8 Wall., 1; Delmas *v.* Insurance Co., 14 Wall., 661; Planters' Bank *v.* Union Bank, 16 Wall., 483.)   But recognizing and regarding it as bank notes, or as any other circulating medium in general if not universal use, and though greatly depreciated below its nominal value, still the only practical standard in the country at the time by which values were regulated and sales and exchanges ordinarily negotiated and business transacted—whether it was so grossly and palpably improper to have sold all or any part of the property belonging to the estate for it that a man of ordinary and reasonable prudence and discretion could not, under the circumstances surrounding appellant at the time, have done so consistently with good faith, for if he might—and it does not appear that he acted otherwise—the

loss must fall upon the owner of the trust estate, and not upon the trustee.

This is not an action to enforce the trust, or for the recovery of the trust fund, but it is to recover damages for a breach of trust, or the value of the trust property alleged to have been wrongfully converted by the trustee. It is not, therefore, relieved from the bar of limitation, as if it were a suit to enforce a trust. It would seem, therefore, that the statute of limitations might have been successfully interposed as a defense but for section 43, article 12, of the Constitution. The construction given to this section of the Constitution in the case of Bender *v*. Crawford, 33 Tex., 745; Moseley *v*. Lee, 37 Tex., 480; and Bentinck *v*. Franklin, 38 Tex., 458, and also sanctioned and approved by the Court at its last term at this place, in Wood *v*. Welder, 42 Tex., 396,—would, however, preclude such a defense; and in view of these decisions, probably it was not pleaded.

Notwithstanding the sanction of universal custom and usage, and the example of the most eminent jurists, I have always entertained a conviction that dissenting opinions by members of the court not concurring in the judgment of the majority were in general inappropriate, if not improper, and have heretofore only conformed to the general usage in this respect so far as when I have entertained a strong conviction contrary to the opinion of the majority of the court about a matter of sufficient interest to prompt me to do so, to have my dissent noted at the time on the minutes, in connection with the entry of the judgment. Whether I shall continue to pursue the same practice in all instances in future, is at present of no moment. I have adverted to the subject merely to say that when the case of Wood *v*. Welder was decided, my dissent from the conclusion of the other members of the court as to the construction and effect of the section of the Constitution to which I have referred, was announced from the bench, and entered upon the record, but mention of it has been accidentally omitted by the reporters in their statements

---

---

of the case. Similar omissions have also occurred in some other cases of less interest.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.