LAURA A. PAGE v. MARY FOUST and others.

*Wills—" Effects."*

The word "effects" used by a testator in disposing of his estate, will be con-
strued to include land, where it can be collected from other parts of the
will that such was the testator's intention.

(*Owen* v. *Owen*, Busb. Eq., 124, cited and approved).

SPECIAL PROCEEDING for dower, commenced before the clerk
and heard on appeal at Spring Term, 1883, of ROWAN Superior
Court, before *Graves, J.*

The controversy between the parties arose upon the construc-
tion of the will of Dempsey Page, deceased, which is set out in
the opinion of this court. The ruling of the judge in the court
below was in favor of the plaintiff, and from the judgment ren-
dered the defendants appealed.

*Mr. J. W. Mauney*, for plaintiff.
*Mr. Kerr Craige*, for defendants.

SMITH, C. J. The plaintiff, the widow of John A. Page,
who died intestate and without issue, brings this suit against the
*feme* defendants, his sisters and heirs-at-law, and their husbands
to procure an assignment of dower in the land described in her
petition, whereof she alleges the intestate was seized and pos-
sessed of an estate in fee.

The defendants resist the plaintiff's claim, and say that the
intestate derived title to the land under the will of his father,
Dempsey Page, made in 1879, by the provisions of which an
estate for life only was devised to the said intestate, if he died
without issue, with remainder to the defendants, Mary and Laura,
in fee.

The solution of the controversy in respect to the title depends,

therefore, upon the construction of the testator's will, so much of which as bears upon the issue is contained in the first four clauses, and is as follows:

"Item 1. I give and devise to my beloved son, John Allison, the plantation on which I now live, containing about 94 acres, lying on the north side of Sherrill's Foard road, adjoining Mrs. Krider, Mrs. Kestler, and others; also one-half of my old plantation, containing about 78 acres, lying on south side of Witherow's creek and joining M. A. File, Mrs. Krider and others; also, my two-horse wagon and harness, together with two mules (his choice), one bedstead and furniture (his choice), one bureau (his choice), and provisions enough to last him and mules until he can make and gather a crop."

"Item 2. I give and devise to my beloved daughter Mary May, seventy-five acres of land, to be taken off from the Sloop place, on which they now live, to be taken off from said place next to M. A. File's fifty acres, being that run off by W. A. Houck and the other 25 acres, joining James F. Cowan and M. A. File; to have and hold during their life-time, and then to go as hereinafter provided."

"Item 3. I give and devise to my beloved daughter Laura E., one-half of my old home place, of which mention is made in item first; and also, what will remain of the Sloop place, after Mary's share is taken off; also, she is to have one year's provisions laid off to her for her and her two children."

"Item 4. It is my will that if any of my children die without legal bodily heirs, or children, then, and in that case, the *effects* herein willed to them to return to the balance of my children then living, or their children, if they are dead and have left any legal bodily heirs. In case of Mary and her husband, should she die first, her husband is to have the use of her effects during his life-time and then return as afore stated."

The result of the controversy depends upon the interpretation put upon the word "effects," used by the testator in the contingent dispositions made in the event of the death of any of

the devisees without issue. If it comprehends the lands previously given as well as the personal estate, the title of the intestate ceased at his death, and the right to dower does not attach; if the term is used in its more restricted and common acceptation, and confined to the personal property bequeathed, the plaintiff is entitled to an allotment of dower in the lands devised to her husband.

"The fundamental rule in the construction of wills," as is said by BATTLE, J., "is to ascertain the *intention* of the testator, and for that purpose all the parts of the will are to be taken in view, and effect is to be given, as far as possible, to every clause." *Owen* v. *Owen*, Busb. Eq., 124.

It is also a well established rule of construction that a testator is presumed to use the words in which he expresses himself, according to their strict and primary acceptation, unless from the context it appears that he uses them in a different sense; in which case, the sense in which he thus appears to have used them, will be the sense in which they are to be construed. Wig. Wills Prop. 1, page 58.

That the term *effects* is capable of expansion, so as to embrace real and personal estate, when it is seen that such is the testator's intention, from an inspection of the provisions of the instrument, is established by past adjudications.

"I take effects," says LORD MANSFIELD, in interpreting a residuary disposition of all the testator's effects, both real and personal, "to be synonymous to worldly substance, which means whatever can be turned to value; and that, therefore, real and personal effects mean all a man's property." *Hogan* v. *Jackson*, Cowp., 304.

So, Sir WILLIAM GRANT, master of the rolls, declares in *Campbell* v. *Prescott*, 15 Ves., 507, "there is no case for the restricted sense which the grandchildren put upon the words ' *all my effects whatsoever*;' " adding, "LORD MANSFIELD says, that the word ' *effects* ' is equivalent to property or worldly substance."

29

To the same general purpose are the cases of *Chilcot* v. *White*, 1 East., 394; *Andrews* v. *Lainchbury*, 11 East., 290; *Franklin* v. *Trout*, 15 East., 394; 2 Williams Exrs., 854; Theo. Law of Wills, 159.

In a recent case which came before the Vice Chancellor, Sir RICHARD MALINS, the authorities were carefully reviewed, and it was decided that by the use of the words "I give all the rest, residue, moneys, chattels, *and all my other effects*," notwithstanding the association of the latter words with articles of personal property before enumerated, "the testator meant to include everything he had in the world, whether *real property* or *personal property.*"　*Smyth* v. *Smyth*, 8 Law Rep., Chan. Div., 561.

There are cases where the will disposes of "effects" with very comprehensive descriptive terms following, such as "of what nature soever," *Hick* v. *Dring*, 2 M. & S., 448; or where the language is, "all my effects," *How* v. *Easles*, 15 M. & W., 450, in which it is held that land was not embraced; but in all, it is conceded that a larger scope will be given to the disposition where it can be collected from other parts of the will that such was the testator's intention.

Thus, in the former of the two cases last cited, it is said: "If the court can see that the testator meant by it to pass his real estate, then the judgment must be for the plaintiff."

The inquiry recurs as to the meaning of the testator in the use of the word found in the clause limiting the property given in remainder, and we are at no loss in arriving at the sense in which he employs it.

1. Land only is devised to Mary, and in the concluding part of the fourth item it is in direct terms provided that, in case of survivorship, her husband shall have the use of *her effects* during his life-time. *"Effects"* are here applied to the devised land, and can have no other significance, for there is no other property to which they can attach.

2. Land is also given to the defendant Laura, with an allowance of provisions for the support of herself and children for

one year.   It cannot be supposed that articles intended to be consumed were to return to the other children in the event of the death of Laura without issue, and there is nothing but her land upon which this devise over can operate, so that it must have been in the mind of the testator when he described it as part of the "effects" thus limited.

Whatever may be the significance of the word unexplained by the context, it is plain that in choosing it the testator meant to include the devised lands given to each of his children, and in this sense we must give it operation.

There is error in the ruling of the court, and there must be judgment that the defendants go without day and recover their costs.

Error.                                                 Reversed.