CARL C. HARPER ET AL. v. H. D. HARPER, JR.

(Filed 14 October, 1908.)

1. **Wills, Holographs, How Proven—Found Among Valuable Papers—Safe.**

When there is evidence tending to show that a paper-writing purporting to be the will of the deceased was altogether in his handwriting and signed by him, and that it was found in a drawer in his iron safe, where he kept notes he had received for money loaned, with other papers, and that it was written on the envelope in which he had kept accident insurance policies, which therein were disposed of, it was not error for the trial Judge to instruct the jury that, if they found the facts accordingly, from the greater weight of the evidence, it would establish the validity of a holograph will under the terms of the statute, whether or not there was any other paper in the same drawer with this particular writing when found.

2. **Wills, Interpretation of—Estate—Property Disposed of—Partial Intestacy.**

A holograph will, written on the back of an envelope containing policies of accident insurance, bequeathed the amount of the policies to the three daughters of testator. It was stated in the will that the son "has had his full share of mine and his mother's estate"; that if any of the children show a "reckless disposition to spend money, only a part of my estate be given them," etc.; that "personal property he disposed of," etc.; disposition was made of children, and their education was provided for, and persons named were requested "to be trustees for my children": *Held*, (1) that the statement that the son had been fully provided for excluded him from further participation; (2) that the expression, the "personal property be disposed of,"

meant its conversion into money, and evidenced the intent that the personal property was not the sole object of the will; (3) there is no intention indicated to restrict the will to either kind of property or of partial intestacy, or to restrict the operation of the will to the lapsed accident policies enclosed in the envelope upon which it was written.

3. Joinder of Action—Wills, Construction of—Devisavit Vel Non.

While it is unusual for the question of *devisavit vel non* and a prayer for the construction of a will to be united in the same action, yet when all the parties appear and request that the whole matter be determined, the question of jurisdiction does not arise, and in this case they were accordingly passed upon.

ACTION tried before *Neal, J.,* and a jury, at June Term, 1908, of LENOIR.

Defendant appealed.

*Rouse & Land* for plaintiffs.
*Loftin, Varser & Dawson* for defendant.

CLARK, C. J. Action by children of deceased and the executor to determine whether the paper-writing, which had been previously probated by the Clerk, is the will of the deceased, and if so, for its construction.

The paper, it is admitted, was wholly in the handwriting of the deceased and was found in his iron safe in the dental office which he occupied. The safe was locked. The combination to the safe was in possession of the son of deceased. It was in evidence that the safe was used by the deceased for keeping money, book of accounts, relics, material for teeth and notes for money loaned. When the safe was opened this paper was found in one of the drawers with some other papers, but it does not appear whether they were valuable or not. There was a small amount of money in the safe. The other drawers were not examined when this paper-writing was found. J. W. Grainger testified that he knew the handwriting of the deceased; also that he had seen the deceased use the safe for books, notes, etc., for some time before he died—could not say how long; that he (witness) "has had

papers there himself." The above evidence was excepted to, but was competent to show that the safe was used for the purpose of keeping valuable papers.

The last paragraph of the evidence of J. W. Grainger was further excepted to because he was one of the "advisory committee" named in the alleged will, and that this was a transaction with the deceased and incompetent, under Revisal, sec. 1631. If it be conceded that being "one of the advisory committee"—an as yet unaccepted trust and without compensation—made the witness "interested in the event of the action," his "having papers in the safe himself" was not a "transaction" with the deceased—certainly not within the meaning of the statute. It was not to show any dealing with the deceased, but merely evidence that the witness considered the safe a suitable place in which to deposit papers for safe-keeping. He does not say that the deceased gave him permission—presumably he did—but the evidence is not for that purpose, but to show from the witness' own conduct that the safe was a proper depository for a will.

The court charged the jury that if they "should find from the greater weight of the evidence that the deceased had at his place of business an iron safe, in which he usually kept his books, accounts and valuable material he used in the practice of his profession, his money and notes he had taken for money loaned, and that he used the said safe for keeping his valuable papers and effects; and if you further find from the greater weight of the evidence that a few days after the interment of the deceased the paper-writing here presented to you was found in a drawer in the said safe, with the combination locked, why, that would meet the requirements of a reasonably just and fair construction of the terms of the statute—'among his valuable papers'—and this would be so, whether there was or was not any other paper in that particular drawer of the safe." This was excepted to, but we find no error therein. In *Sheppard's will,* 128 N. C., 56, it is said:

"The intention of the statute is that it shall appear to be a will, whose existence and place of deposit were known to the testator, and that he had it in his care and protection, preserving it as his will." This paper was found, not only in the iron safe where the deceased was shown to have kept valuable papers, but (though the nature of other papers in that drawer was not shown), it was written on the outside of the envelope which contained the accident insurance policies referred to and disposed of in the paper-writing, and therefore deemed valuable papers by the testator. The jury found that the paper-writing was the will of the deceased.

The will, entirely in the handwriting of the deceased, was written, as above stated, upon the outside of the envelope containing two accident insurance policies of $3,000 each. One of said policies bore the same date as the will (7 April, 1903); the other was issued subsequently, and bears date 13 October, 1903. Said will reads as follows:

"In case of my death the enclosed insurance is for my three daughters, Edith, Fay and Mildred. Henry D. Harper, Jr., has had his full share out of mine and his mother's estate. I request the Citizens Bank of Kinston to be trustee of my children, advised by J. J. Harper, C. W. Howard, J. W. Grainger and N. J. Rouse. This request, that if any of the children show a reckless disposition to spend money, that only a part of my estate be given them, and that in such sum as the trustee and advisory board may agree on. My daughters to be placed entirely under J. W. Grainger, Mrs. Capitola Edwards or Mrs. C. W. Howard. Personal property to be disposed of. Other things, as education, when, where and how, are given entirely to the advisors named above. God bless them all.

"Signed and sealed this 7th day of April, 1903.

"H. D. HARPER.    [Seal.]"

The testator left surviving him three daughters and two sons, who are plaintiffs in this action, besides his son H. D. Harper, Jr., who is named in the will as having "had his full share of mine and his mother's estate."

The construction of the will is not free from difficulty, but the intent of the testator, as derived from "the four corners" of the will, is what is to be sought for. We think the intent of the testator was:

1. By declaring that "Henry D. Harper, Jr., has had his full share out of mine and his mother's estate," to exclude him from any further share. It could have no other purpose.

2. The request to the Bank of Kinston, "to be trustee of my children" (advised by the committee), was an appointment to administer the estate as executor and, after payment of debts, to hold the surplus as trustee till the minors became of age. The daughters were to be placed with the ladies named, and the education of the children was entrusted to the board of advisors.

3. The expression, "personal property to be disposed of," means simply that it is to be converted into money. This incidental reference to it shows that the personal property was not the sole object of the will. Indeed, it is a wise and well-settled rule that wherever there is a will the presumption is that the testator intended to dispose of all his property. *Brown v. Hamilton,* 135 N. C., 10; *Cox v. Lumber Co.,* 124 N. C., 78; *Blue v. Ritter,* 118 N. C., 580; 30 Am. and Eng. (2d Ed.), 667. There is nowhere any intention indicated to restrict this will to either kind of property. On the contrary, the intent seems to be (after excluding the son who had been already fully advanced) to provide that the trustee shall hold the entire "estate" for the other children, and the testator even provides for the restriction in the advances to be made the extravagant, for the custody of his daughters by ladies named, and for supervision of the education of all the children by a board of gentlemen. There was

HARPER *v.* HARPER.

nothing indicative of a "partial intestacy," but rather an effort to dispose of everything and to provide for everything. Twice in this short will the testator uses the word "estate," which includes both real and personal property. *Foil v. Newsome,* 138 N. C., 115; *Glasscock v. Gray, ante; Morgan v. Huggins,* 9 L. R. A., 540; Webster's Dictionary; Bouvier's Law Dictionary.

So far from the will being restricted to the policies found in the envelope, the only reference made to them is the single sentence, "In case of my death, the enclosed insurance is for my three daughters, Edith, Fay and Mildred," while the rest of the will is taken up with the care of his "estate," out of which all five of the children not "fully advanced" are to have allowances and be educated, and with provision for the custody of the girls and supervision by an advisory board of all. It may be further noted that these were not life-insurance policies, but merely one-year accident policies, long since expired, and to restrict the will to disposition of them alone would be impossible. The judgment of the court below is in exact accordance with these views.

We note that this proceeding, brought to term, includes both the issue of *devisavit vel non* and proceedings for the construction of the will. This is certainly unusual, but all the parties are before us, and ask that the whole matter be determined in this action. It is not a question of jurisdiction (which we would be compelled to notice *ex mero motu*), for the Clerk is part of the Superior Court. No exception is taken, and the whole matter, under the consent and request of parties, is disposed of. We find

No Error.