NANNIE R. JONES v. W. A. MYATT et al.

(Filed 19 October, 1910.)

1. **Wills, Interpretation of—Devises—Realty—Words and Phrases.**

   While the term used in a will, "distributive share," ordinarily refers to personal property, and "distributee" denotes the person or persons upon whom such property devolves, this definition is not controlling so as to exclude real property when it appears from the interpretation of the will that real property was the subject of disposition.

2. **Same—Estates—Remainders.**

   A devise of negroes to be kept on the plantation until the daughter of testator shall marry or become of age, or until the two named sons become of age, then the property, both real and personal, shall be equally divided between them; and by the next following item, a devisee of one-half of each distributive share to these three children "as directed above, shall be settled upon each one of my children, . . . so that they shall have the use of said half of each one's distributive share during their natural lives, and at their death to be equally divided between their children, and should either of them die and leave no child, then the said half distributive share shall go to the living child or children." *Held*, the intent or meaning of the words "distributive share" used in the last named item, in connection with the words "devise," "as directed above," was to include both real and personal property; (2) the entire estate was devised to the testator's three children in equal shares, with the time of actual division fixed as specified, and upon division each child would take one-half of one-third in fee, and in the other half a life estate only with remainder in fee to his or her children, to be equally divided among them at the parent's death.

3. **Wills—Tenants in Common—Division by Deed—Remaindermen—Title.**

   Tenants in common may agree upon and apportion among themselves by deeds the land held in common under devises to them made by their two different ancestors; but when only a life estate is devised in part of the lands, this method of division cannot affect the title of the remaindermen, as their interest is derived exclusively from the will, and the deeds cannot have the effect of creating or manufacturing a title.

153—15

APPEAL from *O. H. Allen, J.,* at the April Term, 1910, of WAKE.

Special proceedings for partition.

From the judgment adjuding that the plaintiffs, the children of Alfred Jones, were tenants in common of an undivided one-half interest in the tract of 590 acres with the defendant Myatt, the defendant appealed.

*Armistead Jones & Son* and *Murray Allen* for plaintiff.
*J. H. Fleming* and *Holding, Snow & Bunn* for defendant.

MANNING, J. The rights of the parties depend, first, upon the proper construction of the following items in the will of Elizabeth T. Jones: "Second. I devise that the negroes be kept together on the plantation and the farm be carried on in the same way as it was in my lifetime, until Nancy P. Jones shall marry or become of twenty-one years of age, or either Needhan P. Jones or Alfred Jones shall become of twenty-one years of age, then the property, both real and personal, shall be equally divided between them.

"Third. I devise that one-half of·each distributive share to my children, Nancy P. Jones, Needham P. Jones and Alfred Jones, as directed above, shall be settled upon each one of my children, which shall always and at all times be free from all claims of any and all persons, so that they shall have the use of said half of each one's distributive share during their natural life, and at their death be equally divided between their children, and if either of them shall die and leave no children or no will (which power I give either of them over said one-half of each distributive share to will), then the said half distributive share shall go to the living child or children." The will was written in 1850, and, upon the death of the testatrix in 1864, was duly admitted to probate. The three children of the testatrix were then minors and unmarried. The property of the testatrix in her negroes was, soon after her death, swept away by the stern command of "grim visaged war," and the case presents for determination solely the disposition of her lands. The first contention of the defendant Myatt is that by item 2 the testatrix

devised her real and personal property to her three children to be equally divided between them, and that by the use of the words, "distributive share," in item 3, the testatrix limited the property disposed of under that item to personal property.    We do not think this construction properly interprets the intention of the testatrix as manifested by the other words of the will.    It may here be stated that the children of Elizabeth T. Jones are dead, each leaving children, except Mrs. Nannie P. Jones, who is living and has children, and the plaintiffs are the children of Alfred Jones, and neither of them exercised the power of disposition by will, each dying intestate.    While it is undoubtedly true that the words, "distributive share," ordinarily refers to personal property, and "distributee" denotes the person or persons upon whom such property devolves by act of law in cases of intestacy (Revisal, secs. 132, 144, 145, 155; *Boyd v. Small,* 56 N. C., 39; *Henry v. Henry,* 31 N. C., 278; 3 Words & Phrases Judicially Defined, 2133, 2134, 2135), yet, as is said in Schonler on Wills (2 Ed.), sec. 470, "technical words are liable to other explanatory and qualifying expressions in the context which discloses the testator's actual intention; and where a different meaning is fairly deducible from the whole will, the technical sense must bend to the apparent intention.    In short, the testator's intention, as gathered from the will, shall prevail against the technical meaning of words or phrases so far as may consist, at least, with the rules of sound policy."    So in Gardner on Wills, p. 403, the author says: "So words intrinsically applicable to personal estate may, by force of the context, be made to include land.    This frequently happens where an expression is evidently used as referential to and synonymous with an anterior word, clearly descriptive of real estate, in which case its extent of operation is measured, not by its own inherent strength, but by the import of its synonym.    Even the expression 'personal estates,' and it being clear beyond all possibility of doubt upon the face of the will that the testator meant by these words (not what is ordinarily understood by them but) such real property over which he had an absolute personal power of disposition and control, we have no hesitation in saying that the freehold passed by this description."    In *Hope v. Taylor,* 1 Burrows, 268, *Lord*

*Mansfield* held that the word "legacy" in the will construed in that case, extended to and embraced land. No other word has so fixed and determinate meaning in English jurisprudence, yet it was held, in the case just cited, decided in 1757, in order to give effect to the intention of the testator, that "a different construction has been sometimes put upon the very same words, as applied to money and lands, in order to support the intent of the testator." In *Burwell v. Mandeville's Executors,* 2 How. 560 (577 and 578), *Judge Story* says: "It is said that, admitting such to be his intention (disposal of all his estate), the testator has not carried it into effect; because the residuary clause declares John West his 'residuary legatee' only, and not his residuary devisee also; and that we are to interpret the words of the will, according to their legal import, as confined altogether to the residue of the personal estate. This is, in our judgment, a very narrow and technical interpretation of the words of the will. The language used by the testator shows him to have been an unskilful man and not versed in legal phraseology. The cardinal rule in the interpretation of wills is, that the language is to be interpreted in subordination to the intention of the testator, and is not to control that intention, when it is clear and determinate." So the Court held that if the words, "residuary legatee," were restrained to the mere personalty, the intention of the testator would be defeated, and they were enlarged to embrace realty as well. The decisions of our Court are in entire harmony with these authorities. *Foil v. Newsome,* 138 N. C., 115; *Page v. Foust,* 89 N. C., 447, and cases cited. Therefore it seems to us clear that the testatrix, Mrs. Elizabeth T. Jones, intended by the use of the words "distributive share," in the third item of her will, to mean both real and personal property; she uses the words "devise," "as directed above," referring to the property devised in the second item, and in our opinion to restrain the meaning to personal property would defeat the general scheme of the testatrix in the disposal of her estate. It clearly appears from these two items (quoted above) that the testatrix devised her entire estate to her three children in equal shares; that she fixed the time of actual division, to-wit, the marriage of her only daughter or the arrival at the age of twenty-one of

any one of her three children, and that, upon division, each of her children should own one-half of the one-third (his or her equal part) in fee, but should, in the other one-half of his share, have a life estate only, with remainder in fee to his or her children, to be equally divided at the parent's death among them. The remainder in fee could be defeated by the exercise of the power of disposal by will, but this was not done.

It also appears in the case that Nancy Price died in 1874, leaving a last will and testament, which was duly admitted to probate, in which she devised in fee and in equal parts, a large body of land in Wake County to her three grandchildren, Nancy P. Jones, Needham P. Jones and Alfred Jones—the children of Elizabeth T. Jones. These lands contained 1,526 acres; the lands devised under the will of Elizabeth T. Jones contained 1,230 acres. By the will of Mrs. Price the three Jones children became tenants in common in fee of undivided interests in the land devised by her to them. On the 5th day of June, 1876, the three Jones children, being then of age, agreed upon a division of the lands devised by Mrs. Price and Mrs. Jones. The partition was effected by deed, and we think it was competent to be so done. Being tenants in common of equal shares, but not of the same interests in both devised lands, they, instead of dividing the Price land into three shares of equal value, and of dividing the Jones land into three shares of equal value, and each taking one of these shares in each body of land, they agreed upon a different method of partition, as follows: Needham P. Jones took all the Price land at the valuation of $15,260; and the Jones land was divided between Alfred Jones, 590 acres at the valuation of $14,300, and Nancy P. Jones 640 acres at the valuation of $12,200. Equality of partition at these valuations was restored to Nancy P. Jones by the payment to her by Needham P. Jones of $1,140 and by Alfred Jones of $180. The result of this partition was the exchange by Alfred and Nancy Jones of their two-thirds interest in the Price land, which they held in fee, with Needham P. Jones, for his one-third share in the lands of Elizabeth T. Jones. It is expressly admitted that this partition has been ratified and confirmed by the children of Needham, Alfred and Nancy, and the precise question presented

by this case is what fractional part of the 590 acres allotted to Alfred are his children entitled to under the will of Elizabeth T. Jones. This interest is derived exclusively from that will. It is settled by several decisions of this Court that actual partition merely designates the share of the tenant in common and allots it to him in severalty. *Harrison v. Ray,* 108 N. C., 215; *Harrington v. Rawls,* 136 N. C., 65; *Carson v. Carson,* 122 N. C., 645. It does not create or manufacture a title. The partition could not, however, disturb the limitation affixed to the devised estate. As this Court said in *Williams v. Lewis,* 100 N. C., 142: "The partition separates into parts that which was before held in common as a whole, and no more disturbs the limitations affixed to the devised estates than would have been a devise of the several portions to the respective tenants by the testatrix herself. Indeed, the separate parts are, after the partition directed, as truly held under the contingent limitations as were previously thereto the undivided estates of each in the entire three hundred acres." But while the interests of Alfred's children in Alfred's share of the land of Elizabeth T. Jones could not be and were not affected by the actual partition, we cannot see, as urged upon us by the learned counsel of the plaintiffs, how their interest can be increased from the one-half of a one-third to the one-half of a one-half. We are considering now the interests of Alfred's children exclusively. As Alfred's interest in the Price land was in fee and unfettered by any limitations to his children, why should the property be received in exchange for that interest, fall under the limitations of the will of Mrs. Elizabeth T. Jones? It cannot affect the question that the property he received in exchange was a part of the Jones land. The exchange inured to the benefit of Alfred and not to his children as devisees of Elizabeth T. Jones. The agreed valuation of the Jones land at the date of actual partition was $27,100; the interest of Alfred's children was, under Mrs. Jones' will, one-half of one-third or a one-sixth, and amounted to $4,516.67. The valuation of the 590 acres allotted to Alfred Jones was $14,300, and the fractional part of the said land to which the children of Alfred are entitled, by a simple arithmetical calculation, must be 315 one-thousandths, or practically 31 one-hundredths. The

590 acres must, therefore, be divided between the children of Alfred Jones and the defendant Myatt, so that the said children shall receive such number of acres as will equal in value 315 one-thousandths of the entire tract, of which they are the owners in fee under the will of Elizabeth T. Jones. His Honor adjudged that they were tenants in fee of one-half of the 590 acres. In this there was error, and his judgment will be modified to conform to this opinion, and, as modified, affirmed. The costs will be equally divided between the appellants and appellees.

Modified and affirmed.