ROSABELLE McCULLEN, LOU ETTA JACKSON, MARY LEE, J. G. DAUGHTRY, W. H. DAUGHTRY, LEWIS DAUGHTRY AND NORMAN DAUGHTRY v. FRANK DAUGHTRY, MINOR, AND D. J. TURLINGTON, HIS GUARDIAN, ADDIE DAUGHTRY, WIDOW OF L. H. DAUGHTRY, AND M. E. BRITT, ADMINISTRATOR, C. T. A. OF L. H. DAUGHTRY, DECEASED.

(Filed 7 October, 1925.)

1. Wills—Interpretation—Intent—Presumption.

In construing a will the presumption is against partial intestacy and the rules of construction are only for the purpose of aiding the courts in finding and effectuating the testator's intent, unless it contravenes the law or public policy.

**2. Same—Bequests—"Money on Hand."**

In interpreting the residuary clause of a will, money on hand will not be construed in its restricted sense when it appears that the testator otherwise intended by a proper construction of his will, and in this case it is *held* that a devise to his wife and son of his moneys on hand not only included such as he had in the bank at the time of his death, but commissions on the sale of the balance of a carload of fruit sold by his administrator *c. t. a.* after the testator's death.

APPEAL by plaintiff from SAMPSON Superior Court. *Barnhill, J.*

Action by plaintiffs to construe will of L. H. Daughtry, deceased, and to declare that the plaintiffs are entitled to certain personal property, as distributees. Judgment for defendants. Appeal by plaintiffs. Affirmed.

A jury trial was waived, and the court rendered the following judgment:

"The above entitled cause coming on for hearing before his Honor, *M. V. Barnhill, judge presiding,* at the above term of Sampson Superior Court, and being heard upon the following facts found by the court by consent of both plaintiffs and defendants, with the understanding that thereupon the court might enter judgment construing the will of L. H. Daughtry, deceased, with the right of any of the parties interested to appeal;

"Thereupon, the following facts are found by consent:

"1. That Lewis H. Daughtry died in Sampson County, North Carolina, on 28 December, 1924, leaving him surviving his widow, the defendant, Addie Daughtry, and the following children of a former marriage as his heirs at law and distributees, namely: Three daughters, Rosabelle McCullen, Lou Etta Jackson, Mary Lee; and five sons, namely: J. C. Daughtry, W. H. Daughtry, Norman Daughtry, Lewis Daughtry and Frank Daughtry.

"2. That the said Lewis H. Daughtry left a last will and testament, a copy of which is attached to complaint marked Exhibit A, and made a part of this finding of fact.

"3. That said last will and testament was duly admitted to probate in common form on 30 December, 1924, and is recorded in Record of Wills of Sampson County, Book 7, page 346, and said will having appointed no executor, letters of administration *c. t. a.* were on said date issued to the defendant, M. E. Britt, who has entered upon said administration, and has given bond as required by law for the performance of his duties as such.

"4. That at the time of his death the said Lewis H. Daughtry was the owner of certain real estate, the disposition of which is covered by items one, two, three and six of his will, about which there is now no controversy.

"5. That the said Lewis H. Daughtry at the time of his death owned certain tangible personal property, consisting of household and kitchen furniture, referred to in item four, as to which there is no controversy, and in addition thereto owned the specified items devised to his son, Frank (except the mule, which has been disposed of after the execution of the will), and besides said specific items referred to in item fifth owned one horse, one buggy and buggy harness, certain corn and fodder, and a few minor articles of insignificant value, not specifically referred to in the will.

"6. That Lewis H. Daughtry was at the time of his death engaged in selling a carload of fruit for one Waters of the city of Goldsboro, under which as consignee he was entitled to a 12% commission on net sales, and on the date of his death had on hand certain unsold fruit which the administrator, *c. t. a.,* after qualification surrendered to the said Waters; and prior to his death the said Lewis H. Daughtry had sold and collected from the sales of said fruit $1,628.90, of which sum $1,579.76 had been deposited by him in the Bank of Clinton on account in the name of Lewis H. Daughtry, "Special," the remaining $49.14 being on hand in cash, and the administrator, *c. t. a.,* deducted from the aforesaid $1,628.90 $625.02, as representing the commissions to which the said Lewis H. Daughtry was entitled for fruit sold under said contract and for freight advanced by him, and the remainder of $1,003.88 was by said administrator, *c. t. a.,* turned over to said Waters in settlement of said assignment contract and account as between the said L. H. Daughtry and Waters.

"7. That the said Lewis H. Daughtry at the time of his death had on hand money in the form of bills, notes and specie only to the amount of $20.94, which said sum represented all the cash money in his personal possession at the time of his death except the sum of $67.50 in gold coin, which the said M. E. Britt, administrator, *c. t. a.,* has by consent, distributed and divided between and among each and every one of his children, and thus leaving in his hands only the $20.94 above referred to.

"8. That the said Lewis H. Daughtry at the time of his death had deposited in the Bank of Clinton, subject to his own personal check, $842.91.

"9. That the said Lewis H. Daughtry at the time of his death had deposited in the Wayne National Bank of Goldsboro, the sum of $4,000 on interest-bearing certificate, in words and figures, as follows:

"No. 11718.                    Goldsboro, N. C., November 12, 1924.

"This is to certify that L. H. Daughtry has deposited with The Wayne National Bank four thousand and no/100 dollars, ($4,000),

payable on surrender of this certificate properly endorsed, with interest at the rate of four per cent per annum, if left on deposit six months from date. Interest ceases two years from date unless renewed. This bank reserves the right to require thirty days notice before withdrawal of this deposit.

　　　　　　　　　　　　　　　　　　"L. B. Parrott, Asst. Cashier.

Certificate of deposit not subject to check."

"Upon the foregoing facts, the court adjudges that upon a proper construction of said will, and particularly item seven thereof, that all the property enumerated in items five, seven, eight and nine of the foregoing findings of fact, after first paying all debts and cost of administration, is the property of and should be paid to Addie Daughtry and Frank Daughtry in equal proportions."

The last will and testament of L. H. Daughtry is in usual form, and disposes of his lands to his widow Addie Daughtry, his minor son, Frank Daughtry, and his daughters, in items 1, 2, 3 and 6. The other items are as follows:

"Fourth: I give and bequeath to my wife Addie one-half of my household and kitchen furniture, the other half of said household and kitchen furniture I give and bequeath to my boy Frank.

"Fifth: I give and bequeath to my boy Frank, one mule, one turning plow, one cotton plow, one harrow and one weeding hoe.

"Seventh: If there should be any money on hand after paying for my funeral expenses, including a decent and honorable burying, it is to be equally divided between my wife Addie and son Frank."·

Plaintiff's exceptions challenge the construction set out in the judgment.

*E. G. Hobbs and Faircloth & Fisher for plaintiffs.*

*Graham & Kennedy, Butler & Herring and Henry E. Faison for defendants.*

Varser, J. The one question presented by this appeal is what was the true meaning and intent of the testator in the seventh item of his will when he used the words, "money on hand after paying for my funeral expenses." The intention of the testator is the guiding star in this search. Technical definitions give way to popular uses of words when the context shows a nontechnical use. *Jones v. Myatt,* 153 N. C., 225; Schouler on Wills, sec. 470; Gardner on Wills, 403; *Foil v. Newsome,* 138 N. C., 115; *Page v. Foust,* 89 N. C., 447.

There is always a presumption that a testator did not intend to die partially testate, and partially intestate. His very act in making a will

indicates a purpose to exercise the right to dispose of all his property according to his will, and not according to the provisions of the statutes in case of intestacy. *Foust v. Ireland,* 46 N. C., 184; *Boyd v. Latham,* 44 N. C., 365; *Reeves v. Reeves,* 16 N. C., 386; *Gray v. Noholoa,* 214 U. S., 108; *Powell v. Wood,* 149 N. C., 235, 238; *Peebles v. Graham,* 128 N. C., 222; *Harper v. Harper,* 148 N. C., 453, 457; *Blue v. Ritter,* 118 N. C., 580; *Cox v. Lumber Co.,* 124 N. C., 78; *Speight v. Gatling,* 17 N. C., 5; *Jones v. Perry,* 38 N. C., 200; Mordecai's Law Lectures, 1281; *Cox v. Jernigan,* 154 N. C., 584; *Austin v. Austin,* 160 N. C., 367.

The accepted rules of construction exist only for the purpose of aiding the courts in finding the testator's intention. *Galloway v. Carter,* 100 N. C., 111; *Rees v. Williams,* 165 N. C., 208. The welfare of society is promoted by the statutory right of the citizen to declare his intention which he wishes to be performed after his death in respect to his property. Blackstone says that, in the order of things, this right is necessary for the preservation of the peace of society and to avoid "an infinite variety of strife and confusion." Mordecai's Law Lectures, 1138; Blackstone (Lewis's Edition), Vol. 2, 490.

Hence, in order to preserve and perpetuate the primary principle which underlies the statutory right to make wills and testaments, we must find the intention of the testator, and give it effective force unless it contravenes the law, or public policy. *Edens v. Williams,* 7 N. C., 27; *In re Knowles,* 148 N. C., 461; *Harper v. Harper, supra; Capehart v. Burrus,* 122 N. C., 119; *Hines v. Mercer,* 125 N. C., 71; *Holt v. Holt,* 114 N. C., 241; *Houck v. Patterson,* 126 N. C., 885; *Lynch v. Melton,* 150 N. C., 595; *Rollins v. Keel,* 115 N. C., 68; *Tucker v. Moye,* 115 N. C., 71; *Dunn v. Hines,* 164 N. C., 113; *Taylor v. Brown,* 165 N. C., 157; *Lynch v. Melton,* 150 N. C., 595.

With this approach to the consideration of the testator's meaning and intention in using the term "money on hand," and mindful of the rules applicable, we are minded to agree with the construction declared by the learned judge in the court below.

Money, in its narrow and restricted sense, may mean only currency or gold or silver coin, bearing the government stamp, but in its more general and popular use, it has a much broader meaning, and indicates any current measure of value which serves the purpose of coin in its absence. In a will it may mean, if so indicated by the context, any form of property. *Kennedy v. Briers,* 45 Tex., 305; *Paul v. Ball,* 31 Tex., 10. Money will be held to include real and personal property, if the intention is shown by the context.

In the matter of the *Estate of Thomas Miller, deceased,* 48 Cal., 165, money is popularly known and used as indicating property of every

description. *Jacob's Estate,* 140 Pa. State, 268. "The rest of my money," in view of the context of a testamentary document, may cover all the residue of an estate. In the *Goods of Bramley,* 4 British Ruling Cases, 546. "The balance of my money" (*In re Miller,* 48 Cal., 165). "Whatever money is left after my burial" (*Boardman v. Stanley,* 21 Week Rep., 644). "All money that remains after all debts are paid" (*Re Blackstone,* 95 N. Y. Supp. 977). "The residue of all my money" (*Nevinson v. Lennard,* 34 Beav., 487; *Stooke v. Stooke,* 35 Beav., 396), illustrate a few of the instances of the use of the popular understanding and meaning of the term "money," when not restricted by the context. To the same effect are the following: *Montgomery County v. Cochrane,* 121 Fed. Rep., 17; *Dabney v. Dottrell,* 50 Va. (9 Grattan), 572, 579; *In re Thayer's Will,* 149 N. Y. Supp., 141; *Pohlman v. Pohlman,* 150 Ky., 679; *Dillard v. Dillard,* 97 Va., 434; Schouler on Wills, Executors and Administrators, 5 ed., Vol. 1, par. 505; Jarman on Wills, 2 Vol., 372; *Jenkins v. Fowler,* 63 N. H., 244. *Decker v. Decker,* 121 Ill., 341, holds that, "money remaining after my death" included not only actual cash, but all the other personal estate of the testator, which consisted chiefly of money loaned, and not used in paying debts, including funeral expenses.

When we come to our own decisions we find the same views declared. *Bradley v. Jones,* 37 N. C., 245; *Fulkeron v. Chitty,* 57 N. C., 244; *Apple v. Allen,* 56 N. C., 120.

A deposit in bank is, according to the common understanding, regarded as cash. *Adams v. Jones,* 59 N. C., 221. In *Page v. Foust, supra,* the word "effects" held to include land, because the will, as a whole, so indicated the intention. In *Fulkeron v. Chitty, supra,* the "rest and residue of my moneys" was held to include notes and bonds.

The testator, a man of practical affairs, may be presumed to know what is usually done in the course of the administration of estates, and that all debts and choses in action and bank deposits are reduced to cash by the personal representative; and the funeral expenses, the debts, and charges of administration are paid, and then the distribution is had. He certainly is presumed to know that "funeral expenses, including a decent and honorable burying" could not be paid out of the $20.94. This is like unto a residuary clause. The intent to use "money" in its popular sense is plain, and the judgment appealed from is a correct application of the law to the facts.

It is, therefore,

Affirmed.