It will be noticed that plaintiffs and certain of the defendants appealed from the judgment. Only two briefs were filed, in which the formal division between plaintiffs and defendants is not observed. It is unnecessary to observe it in this opinion.
In another of its phases the will of A. M. Rigsbee was construed by this Court in an opinion reported as Haywood v. Rigsbee, 207 N.C. 684, *Page 758 178 S.E. 102. The will is printed in full in that Report, beginning with page 686, and we refer to it, if further perusal may be desired.
Only the parts of the will directly bearing upon the question before us are reproduced here. That question is rather circumscribed, and we are inclined to confine our attention as closely as we may to its immediate consideration. When and in what manner will the roll be called to determine who are the remaindermen taking after the life estates created in the will?
At the time of the execution of his will, on 7 August, 1893, A. M. Rigsbee had eight living children, and at the time of his death, 29 November, 1903, there were seven, a daughter, Cora F. Markham, having predeceased him. One son, W. T. Rigsbee, died during the thirty years following the death of his father. Both of these died without ever having had any children.
Under the terms of the will, certain lands were devised to each of the children in fee. In addition to this each child was devised certain real estate for life, with the remainder to the children of such child, if any were living at the time of the death of the life tenant. These life estates, with remainders, were created in Items Second to Ninth of the will, inclusive, and may be summarized as follows: "Item Second: Cora F. Markham: `During her natural life' . . . `and at her death' . . . `to her children if any are living at her death.' Item Third: Robert H. Rigsbee: `For and during his natural lifetime and at his death to his children if any living then.' Item Fourth: Mary E. Middleton: `For and during her natural life, and at her death to her children then living.' Item Fifth: Zoa Rigsbee: `For and during her natural life and at her death to her children then living.' Item Sixth: Sallie A. Rigsbee: `For and during her natural life, and at her death to her children then living.' Item Seventh: William T. Rigsbee: `For and during his natural life, and at his death to his children then living.' Item Eighth: Mattie T. Rigsbee: `For and during her natural life, and at her death to her children then living.' Item Ninth: Rosa Rigsbee: `For and during her natural life and at her death to her children then living.'"
Item Thirteenth of the will sets up a trust providing that all of the residue of the estate, except county and municipal bonds, should be sold and converted into cash, which, with the county and municipal bonds, should be delivered to the trustees, to be held and finally disposed of as provided in the trust. It is provided that "The said trust is to continue and exist for thirty years from the time of my death and is then to be closed by an equal distribution of the fund among my children and their issue."
This item also contains the following provision: "If any of my children shall die leaving no issue at their death, then the property and *Page 759 
estate of such child either in the trust fund or devised specifically to them for life, shall go into the trust fund specifically or the proceeds thereof as my Trustees think wisest, and be treated, managed and finally divided as if originally a part of the trust fund."
Of the children who survived the thirty-year period of the trust, which terminated 29 November, 1933, all had children of their own living at the institution of this suit, with the exception of Miss Sallie Rigsbee, who has never had any children and is unmarried.
Upon these facts the appellants contend that the limitations over or remainders after the life estates designated in the above items of the will became vested respectively in the children of R. H. Rigsbee and the children of the several other life tenants, children of the testator, upon the expiration of the thirty-year term of the trust; or, in other words, that the expiration of the trust marks the time at which the roll should be called with respect to those who shall take remainders under these provisions. Amongst the arguments advanced in support of that position are the provisions of C. S., 1737, relating to the vesting of contingent interests upon death without issue (Hilliard v. Kearney, 45 N.C. 221;American Yarn Co. v. Dewstoe, 192 N.C. 121, 133 S.E. 407), which they contend applies to these remainders; the rule of construction favoring the early vesting of property interests (Bank v. Murray, 175 N.C. 62,94 S.E. 665); and the presumption against intestacy (Crouse v. Barham,174 N.C. 460, 93 S.E. 979; Faison v. Middleton, 171 N.C. 170,88 S.E. 141; Foust v. Ireland, 46 N.C. 184; Harper v. Harper, 148 N.C. 453,62 S.E. 553).
The appellees contend that as to the property involved in this litigation the contingency contained in the original limitations, that is, the existence of members of a class (children of the life tenants), who may take upon the death of such life tenant, still persists, notwithstanding the provisions of the trust, and prevents vesting of the remainders until that contingency is removed and certainty as to the takers, if any there are, is substituted for it upon the death of the life tenants; and that the roll is to be called at the death of the life tenant. They argue, however, that the devises set out in the above Items Second to Ninth, inclusive, are so affected by the provisions of Item Thirteenth, creating the trust, that if the contingency named in the trust — that is, the death of the life tenant without issue — should happen either during the thirty-year period or thereafter, the property must go into the trust, by which device the objection of partial intestacy may be obviated.
With respect to administration, the will divides the property with which it deals into two classes, one which goes to the beneficiaries by direct devise, and another which reaches them mediately from the trust. The former does not come under any obligation to the trust until the *Page 760 
happening of the event mentioned in Item Thirteenth, namely, the death of the life tenant without issue, when the property so affected falls within the trust. In our opinion, to be thus effective that event must have happened within the thirty-year period following testator's death, that is to say, on or before 29 November, 1933, and not thereafter. Correspondingly, the trust has no concern with other property, and we find no expressions in Item Thirteenth which are intended to control or affect its disposition.
The trust constitutes a distinct and separate plan, within the general testamentary scheme, for the security of the objects of the testator's regard during the thirty-year period of the trust, and for such further time as the effect of his beneficence may last. The very creation of a trust indicates a desire to effect a disposition of the property different from that which might be made conveniently in direct devises. The terminology used in designating the beneficiaries is at times different, in the direct devises "children," in the trust "issue," and we are constrained to conclude that the descriptive words were used advisedly. While the trust sticks closely to the interests of the immediate family of the testator, it lets in, at the close, a larger class than that provided for in the direct devises — probably both because of a natural regard for the testator's descendants, as well as to avoid an invidious contrast at the time of distribution which might reflect on his humanity. Considering this separateness of treatment and the carefully chosen expressions in Item Thirteenth which, as we have stated, seem to us to have no general application to the disposition of property other than that included in the trust, this section of the will is of no material aid to us in interpreting its other parts or supplying any want of testamentary direction therein.
Upon such analysis we are unable to see how the provisions of C. S., 1737 can be made to apply to the devise of property outside the trust, since the contingencies as to such property, which are all identical, are not those of which the statute takes cognizance, and are not affected with the remoteness attending limitations over depending on an indefinite failure of issue. The statute might apply as to the property drawn within the trust upon such a contingency, but as to that the roll has been called and those qualified to take have answered. Haywood v. Rigsbee, supra. In fact, the contingency which the appellants point out as calling for the application of the statute, perhaps through the vicarious offices of the trust provisions, do not arise out of the limitations of the will, but subsilentio, because the will does not speak.
The rule favoring an early vesting of property is one of interpretation and may not be invoked either against the plain wording of the will or to supplement a want of testamentary expression in that regard, where *Page 761 
no doubt exists (Freeman v. Freeman, 141 N.C. 97, 53 S.E. 620); nor can we, in the face of the plain provisions of the will, indulge the presumption against intestacy to advance the time when contingent interests may vest so as to destroy the effect of the contingency, nor loose the draw-strings of the trust and enlarge the receptacle for the admission of property which the testator did not commit to it, so that partial intestacy may be avoided. (McCallum v. McCallum, 167 N.C. 310, 83 S.E. 250).
We think the following quotation from the opinion in Fulton v. Waddell,191 N.C. 688, 689, 132 S.E. 669, per Justice Brogden, is applicable to this situation and expresses the conclusion we have reached in the case at bar: "The remainder is limited to a class, and the class is to be ascertained at the termination of the life estate. Bowen v. Hackney,136 N.C. 187; Witty v. Witty, 184 N.C. 375.
"The person or persons answering the description when the life estate terminates, takes the whole property. In other words, when the contingency upon which the estate is to vest happens, the law immediately calls the roll of the class. Those who can answer, take. Gill v. Weaver, 21 N.C. 41;Sanderlin v. Deford, 47 N.C. 74; Knight v. Knight, 56 N.C. 167;Hawkins v. Everett, 58 N.C. 42; Grissom v. Parish, 62 N.C. 330; Brittonv. Miller, 63 N.C. 270; Wise v. Leonhardt, 128 N.C. 289; Cooley v. Lee,170 N.C. 18; Witty v. Witty, supra; Phinizy v. Foster, 90th Ala., 262.
"The prevailing rule governing in such cases is thus stated in Demill v.Reid, 71 Md. 187: `It seems to us to be clear law, as well as good sense, that in a case like this where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons answering the description in ease when the contingency happens, they alone can take."
The conclusion is supported by Moseley v. Knott, 212 N.C. 651,194 S.E. 100; Mercer v. Downs, 191 N.C. 203, 131 S.E. 575; Bowen v. Hackney,supra, 48 S.E. 633. In Moseley v. Knott, supra, there is a collection of authorities to the same effect.
It is not necessary for us to deal with any question of intestacy in the decision of this case. We only say that property not intended to be administered through the trust cannot be drawn into it upon the theory advanced.
The judgment of the court below is
Affirmed. *Page 762