## FOIL v. NEWSOME.

(Filed April 18, 1905).

*Wills—Residuary Clause—Construction—Estate—Trustees Under Will—Powers of Sale of Land.*

1. Where a will provided among other things, that "the residue of my estate of every kind, I give, bequeath and devise to my daughter during her life time; said estate to be placed in the hands of my trustee; said trustee is to invest and keep invested said estate and the interest or income accruing therefrom paid by him to my daughter during her life and at her death paid over by said trustee to her issue;" held the testator did not die intestate as to any portion of his property, and the above residuary clause includes the real as well as the personal property.

2. The words "balance and residue of my estate of every kind" include the reversionary interest in the real estate in which a life estate had been carved out.

3. The trustee has by implication the power to sell the land for the purpose of converting it into an income-producing property.

4. The usual rule adopted by the courts is to find in language imposing upon an executor or trustee the duty of disposing of a mixed fund or property an implied power to sell real estate, to the end that he may discharge such duty.

PROCEEDING for partition by T. A. Foil and others against A. H. Newsome and others, heard by *Judge C. M. Cooke,* at the November Term, 1904, of the Superior Court of Rowan County, upon agreed facts. From the judgment rendered, both parties appealed.

### PLAINTIFFS' APPEAL.

*Overman & Gregory* for the plaintiffs.
*Burton Craige, L. H. Clement, A. Burwell* and *T. C. Linn* for the defendants.

CONNOR, J. This was a petition for sale of land for partition. The plaintiffs claimed an undivided interest in the *locus in quo* with defendant Ingold Newsome, as heirs at law of Tobias Kesler. Defendant Ingold Newsome claimed that she was sole seized for life, remainder to her children, and other defendants, under the will of said Kesler. That defendant James H. Ramsey trustee, was empowered under the provisions of the will to sell the land and invest the proceeds for the purpose of executing the trust declared therein. The cause having been transferred to the trial docket of the Superior Court, the parties agreed that the judge should try and determine the controversy upon an agreed state of facts in a suit for the purpose of obtaining a construction of the will—waiving all questions of form or procedure. The decision of the controversy is dependent upon the construction put upon the fifteenth item of the will, which is in the following words: "The balance and residue of my estate of every kind I give, bequeath and devise to my daughter Ingold Newsome, wife of A. H. Newsome, during her life time; said estate to be placed in the hands of my trustee hereinafter named and appointed for the uses and purposes as follows, to-wit: said trustee is to invest and keep invested said estate, and the interest or income accruing therefrom is to be by him paid to my said daughter, Ingold Newsome, for and during her natural life, and at her death said estate to be paid over by said trustee to her issue: provided, however, that my said trustee shall not be chargeable with interest on any money or personal estate lying idle in his hands." It appeared that said Kesler held mortgages upon certain tracts of land described in the petition. That said mortgages were foreclosed and the lands purchased by the executor. As to such tracts the plaintiffs do not except to the judgment of the court. The other tracts were owned by Kesler at the time of his death. The plaintiffs are his children and grand children, and defendant Ingold is his daughter—the other defendants,

except Ramsey, trustee, being her children.   His Honor was
of opinion that by Item 15 of the will a life estate was de-
vised to the defendant Ingold.   That said land, together with
the personalty, was to be under the control of the defendant
Ramsey, trustee.   That as to the remainder in fee after the
termination of the life estate, the testator died intestate and
the same descended to and vested in his heirs at law.   That
as there was objection to the partition during the continuance
of the life estate, the prayer of the petition was refused.
To this ruling the plaintiffs excepted and appealed, assign-
ing as error in the judgment of the court "that the defendant
Ingold Newsome is entitled to a life estate in all the lands
described in the petition.   That plaintiffs are not entitled to
partition during the life of said Ingold."

We concur with His Honor in holding that Item 15 of
the will, being the residuary clause, includes the real, as
well as the personal property.   "The word 'estate,' taken in
its primary sense, as used in a will, without anything in the
context to limit it, is a word of very extensive meaning.   It
is nearly synonymous with the word 'property' when that
word is not qualified by the word 'personal.'   Under the
word 'estate' used in its primary sense, real property of ev-
ery description will ordinarily pass, and the presumption is
that the testator, in using the word, uses it in its broad and
inclusive signification, unless the context restricts its meaning
to some particular species of property."   1 Underhill on
Wills, 295.   In *Clark v. Hyman,* 12 N. C., 382, *Taylor, C.
J.* says:   "That the words, property, possessions or estates
are sufficient, if not qualified, to carry real estate, is well
settled by many decisions but it is otherwise, if it appears
from the context that personal estate only was in contempla-
tion of the parties."   In *Harrell v. Hoskins,* 19 N. C., 479,
*Gaston, J.,* says: "The words 'all my property,' unless they
are explained by other words in the will to have a different
meaning, embrace every subject of property and every inter-

est therein which belonged to the testator. The word 'estate'
is confessedly sufficient for these purposes; and in holding it
to be thus sufficient, it has been said to import the entire prop-
erty of the testator. In *Pippin v. Ellison,* 34 N. C., 61, it
is said that the word 'estate' has a broader meaning than
property. Schouler on Wills, Sec. 510; Pritchard on
Wills, 415; 11 Am. & Eng. Enc. (2nd Ed.) 359; *Page v.
Foust,* 89 N. C., 447. In the case before us the word 'es-
tate' is followed by the words 'of every kind.' The plain-
tiffs say that conceding the general rule to be as stated, it
must be taken subject to the well settled modification that
the usual import of words may be restrained in their opera-
tion by the context; that prior words of general signification
may be controlled and modified as to their meaning by sub-
sequent expressions and the intention of the testator reached
from the whole will. *Holt v. Holt,* 114 N. C., 241. It is
urged that the words following the general descriptive terms
"said estate to be placed in the hands of my trustee," "said
trustee is to invest and keep invested said estate and the in-
terest or income accruing therefrom is to be paid," etc.
*  *  *  "and at her death said estate to be paid over by
said trustee", etc. are appropriate to personalty only. We
have carefully examined the cases of *Doe, etc. v. Buckner,*
6 Dunford and East 610 (1796) and *Doe v. Hurrell,* 5 Barn
& Ald (7 E. C. L.) 8. We have also noted the observations
of Mr. Jarman in regard to these and other cases. *Newland
v. Majorbanks,* 5 Taunt. 208; Jarman on Wills, 5 Ed., 334.
They forcibly illustrate the wisdom of his words. "The
cases  *  *  *  often present questions extremely embar-
rassing to a judge or practitioner, and different minds will
almost unavoidably form different opinions as to the weight
to be ascribed to particular expressions or circumstances of
inapplicability as excluding real estate." Mr. Underhill
says: "The earlier English cases show a decided tendency
to restrict the meaning of the word 'estate' to personal prop-

erty, meaning thereby everything except freehold lands."
He says that they have been by implication, if not expressly
overruled by subsequent decisions of the same courts. "The
modern tendency, both in England and the United States is
to give such words as 'estate,' 'property' or 'effects' their
broadest meaning consistent with a true construction of the
testator's intention." The plaintiffs direct our attention to
the whole will and say that we will find there manifested an
intention sustaining their contention. The will shows a
carefully considered plan or scheme in the distribution and
settlement of a large estate. The wife is the first provided
for. Each child is given real and personal property with
limitations and trusts attached thereto. The testator uni-
formly uses apt words, distinguishing gifts of real and per-
sonal property, such as "give and devise," and "give and be-
queath," respectively, whereas in the residuary clause he uses
the terms "give, bequeath and devise" showing a recognition
of the different kinds of property to pass. He carefully ex-
cludes one of his grandchildren by name from any partici-
pation in his estate. It is true that the terms "keep in-
vested," "paid over," relate to handling and disposing of
personalty. They also say that the testator uses the word
"income" as synonymous with "interest" in every other
clause in which a disposition of personalty is made. They
further say that it is a well settled rule of construction that
the heir is favored and can be excluded only by express
terms or necessary implication, citing many authorities from
this and other courts. 2 Jarman on Wills, 112; Schouler
on Wills, Sec. 480; *Holton v. Jones,* 133 N. C., 403. These
well considered arguments are entitled to and have received
our most careful consideration. On the other hand defend-
ants' counsel urge on our attention the equally uniform rule
that every testator is presumed to intend to dispose of all his
estate and not to die intestate as to any part. *Pearson,* J. in
*Boyd v. Latham,* 44 N. C., 365 says: "The rule *ut res*

*magis valeat quam pereat* comes in aid of the general presumption that one who makes a will intends to dispose of all his estate." *Foust v. Ireland,* 46 N. C., 184; *Apple v. Allen,* 56 N. C., 120. The words in the residuary clause "all my estate of every kind," following the words "give, bequeath and devise," strongly indicate a purpose to dispose of all of his property not specifically given away. *Gaston,* J. in *Harrell v. Hoskins, supra,* says: "The devise then of all the property not previously disposed of, either by gift or loan, is a residuary devise and will carry with it every reversionary interest in the testator which has not been specifically devised, whether such interest were in contemplation of the testator or not and whether it were known or unknown to him, unless it expressly appear upon the will or be necessarily inferred from it that his intention was confined to pass other estates and interest only, and actually to exclude such reversion therefrom. The true inquiry then is, whether it is manifest in the will that the testator intended to exclude the reversion from the operation of the residuary devise." Discussing the question and considering the arguments urged against the construction, he admits their force and further says: "But as the words of the residuary devise do, in their ordinary as well as their legal import, comprehend this reversion, the argument to be successful should establish a manifest intent in the testator not to include it ✱ ✱ ✱ Courts of justice in many cases cannot hope to define with certainty the intentions of testators. It is safer, when words are found in a will which by usage and legal interpretation embrace certain devisable interests and are used without qualification or explanation, to understand the testator as meaning what he says rather than to indulge in the hopeless pursuit of making out his meaning by refined and minute analysis. Things and interests embraced within the disposing words of a will must be taken to pass by them unless there can be found a declaration plain to the con-

trary." In *Saumerez v. Saumerez,* 4 My. & C. (18 Eng. Ch.
Rep.) 330, the testator in the residuary clause of his will
used words sufficient to include the reversion in certain realty
given to his son for life. The Lord Chancellor said: "But
the difficulty is that in directing the application of such resi-
due of his property, he has used expressions and prescribed
a course of dealing not applicable to land but to personalty
only. He directs his son's share to be placed in the names
of trustees and the interest to be paid to him who was already
tenant for life of the land, and he authorizes his trustees in
certain cases to advance part of the capital   *   *   *   The
question then is, whether such expressions and directions are
sufficient to give a restricted meaning to the gift of the resi-
due of the property, and to confine these words (sufficient
of themselves to pass freehold as well as personal property)
to passing the personal property only." He proceeds to say
that it is not necessary to ascertain whether the testator had
any particular property in contemplation or not; that such
gifts may be introduced to guard against the testator's having
overlooked some property or interest in the gifts already de-
scribed. "The circumstances of his using expressions and
giving directions applicable only to the personal estate, may
prove that he did not at any time consider, or was not aware,
that this fee would be a part of his residue, but if such
knowledge be not necessary. as it certainly is not, to give va-
lidity to the devise, the absence of it, though so manifested
cannot destroy the operation of the general intent of passing
all the residue of his property." It will be observed that
the expressions relied upon by the plaintiffs to limit and re-
strict the meaning of the operative words of gift, relate only
to the management and control of the property and not to
the estate or interest given, nor to the inclusive scope of the
terms "the balance and residue of all my estate of every
kind."

We are, upon careful consideration, of the opinion that

the testator did not intend to die intestate in respect to any portion of his property; that there is nothing in the declaration of trust in regard to the control of the property which plainly shows an intention to restrict the operation of the words "give, bequeath and devise" as applied to "the balance and residue of my estate of every kind". To put any other construction upon the language used would give to the real estate, not specifically devised, a direction clearly inconsistent with his expressed wish, and destroy the general scheme or plan adopted for the disposition of his property.

Affirmed.

## DEFENDANTS' APPEAL.

CONNOR, J. The defendants (children of Ingold Newsome) and J. H. Ramsey, trustee, except to so much of the judgment as holds that Tobias Kesler died intestate as to the reversion in the real estate given to Ingold Newsome for life. They insist that the language of Item 15 of the will is sufficiently comprehensive to carrry the fee subject to the life estate. The facts are set forth in the opinion disposing of the plaintiff's appeal. The same reasons controlled by the same line of authorities which led us to the conclusion that a life estate passed to Mrs. Newsome, lead us to the same conclusion in regard to the fee. The words "balance and residue of my estate of every kind" we think include the reversionary interest in the real estate in which a life estate had been carved out. The presumption that a testator intended not to die intestate in regard to any part of his estate, is strengthened by the use of language so inclusive as that found in this item of the will. The same observation applies to a consideration of the entire will. He provides for each of his children, carefully excepting one of his grandchildren by name. We find nothing in the will or the condition of the estate or family, so far as we are informed by the record, to rebut the presumption, or cause us to think that

he intended the reversion in the land undisposed of by specific devise of uncertain value, by reason of the uncertain time at which the life estate will terminate, to be held until such time and divided among his heirs at law. We infer that Mrs. Newsome, at the time the will was executed, September 29, 1894, was a young woman, as six of her children are now infants, only one being of full age. We also infer from the size of the several tracts of land described in the complaint, and the fact that they are not specifically devised, that they are of inconsiderable value. In view of these facts, casting light upon his purpose, as indicated by the language used, we conclude that his intention was in harmony with the presumption raised by the law. This view is sustained by the fact that he appoints a trustee to manage and control the property given to his daughter and children and derive an income therefrom. *Page v. Atkins,* 60 N. C., 268. We are also of the opinion that the trustee has by implication the power to sell the land for the purpose of converting it into an income producing property. The usual rule adopted by the courts is to find in language imposing upon an executor or trustee the duty of disposing of a mixed fund or property, an implied power to sell real estate to the end that he may discharge such duty. *Vaughan v. Farmer,* 90 N. C., 607; *Crawford v. Wearn,* 115 N. C., 540; *Council v. Averett,* 95 N. C., 131. This construction reconciles the use of the word "invest"—pay over interest or income.

The judgment of the court below in respect to the disposition of the reversionary interest in the land described in the petition must be reversed. As all the parties in interest are before the court, we can see no reason why, if so advised, they may not take an order for the sale of the land by the trustee in this case. In this way, the rights of all parties and security of title to the purchaser may be amply protected.

The Superior Court having acquired jurisdiction may

retain the cause and make all proper and necessary orders in the premises.   Let this be certified.

Reversed.

WALKER, J., did not sit in these appeals.