## MEEKINS v. BRANNING MFG. CO. et al.

(District Court, E. D. North Carolina. June 30, 1915.)

1. CONVERSION ⬅═1—NATURE OF DOCTRINE.
    In equity, money directed to be employed in the purchase of land and land directed to be sold and converted into money are considered as that species of property into which they are directed to be converted, whether the direction is given by will, contract, or otherwise.
    [Ed. Note.—For other cases, see Conversion, Cent. Dig. § 1; Dec. Dig. ⬅═1.]

2. CONVERSION ⬅═15—CONVERSION OF REALTY INTO PERSONALTY.
    A testator, after making specific devises and bequests to his wife and each of his children, directed that all the residue of his estate after taking out the specific devises and legacies should be sold and debts owing to him collected, and that if there should be any surplus above the payment of debts, expenses, and legacies, such surplus should be equally divided between his wife and children. Held, that there was an equitable conversion of undevised real estate into personalty.
    [Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. ⬅═15.]

3. EXECUTORS AND ADMINISTRATORS ⬅═138—POWER OF SALE—CONSTRUCTION OF WILL—"ESTATE."
    The executors were authorized to sell real property not specifically devised, since the word "estate" included land, and where by the terms of a will a fund consisting of the proceeds of real and personal property is created and its application or distribution directed, but no specific person is named to make the sale, the power is by necessary implication given to the executor.
    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. ⬅═138.
    For other definitions, see Words and Phrases, First and Second Series, Estate.]

⬅═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CONVERSION ☞19—OPERATION AND EFFECT—DESCENT AND DISTRIBUTION.
Where a will imposes upon the executor the duty to convert land into
money for the purpose of discharging trusts imposed upon him, the con-
version takes place as of the death of the testator, and the subsequent
devolution and disposition of the fund is governed by the rules applicable
to personal property; and hence, where persons who are to share in the
distribution die, their personal representatives are entitled to their share.
[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 45–51, 55;
Dec. Dig. ☞19.]

5. EXECUTORS AND ADMINISTRATORS ☞148—POWER OF SALE—TITLE OF HEIRS.
When no title is devised to an executor, but a mere power to sell is
given, the legal title descends to the heir until the power is executed, when
the purchaser's title relates to the death of the testator.
[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 595–601; Dec. Dig. ☞148.]

6. CONVERSION ☞15—FAILURE OF PURPOSE OF CONVERSION.
When the purpose for which an executor is directed to convert land
into money fails or becomes unnecessary before the sale is made, the power
to sell ceases and the title to the land remains in the heir or devisee; but
when the purpose only partially fails, or fails only as to one or more of
the objects for which the sale is to be made, the conversion must still be
made in order to satisfy the purposes which remain effective.
[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52;
Dec. Dig. ☞15.]

7. CONVERSION ☞15—FAILURE OF PURPOSE OF CONVERSION.
Where a testator directed that the residue of his estate should be sold
and that if there should be any surplus over and above the payment of
debts, expenses, and legacies it should be equally divided between his
wife and children, there was no failure of the purpose for which the con-
version was directed, though the proceeds of a sale of land were not
necessary for the payment of debts and legacies, as the payment of debts
and legacies constituted only two of the purposes of the conversion.
[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52;
Dec. Dig. ☞15.]

8. CONVERSION ☞22—ELECTION TO TAKE IN UNCONVERTED FORM.
Notwithstanding a positive direction in the will to sell land, those to
whom the proceeds are given are entitled to elect to take the land in its
unconverted form, and thereby to convert the property back to its original
condition; but the right to elect must be made by all of the beneficiaries
and all must be sui juris, as an infant cannot so elect.
[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 66–72; Dec.
Dig. ☞22.]

9. CONVERSION ☞22—ELECTION TO TAKE IN UNCONVERTED FORM.
An election by those entitled to the proceeds of land which a testator
directs to be sold to take the land in its unconverted form may be accom-
plished by acts indicating a purpose to take the land or by a demand upon
the trustee, when vested in him, for a conveyance of the legal title, or by
enjoining the trustee or executor from exercising the power of sale.
[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 66–72; Dec.
Dig. ☞22.]

10. CONVERSION ☞22—ELECTION TO TAKE IN UNCONVERTED FORM.
A testator directed that the residue of his estate should be sold and
that if there should be any surplus after the payment of debts, expenses,
and legacies it should be equally divided between his wife and his four
children in equal portions. Undevised land was not sold for 14 years after
his death. Two of the children as executors exercised the power of sale.
The husband of a daughter, who was dead, accepted her share as guardian
of his minor son, and, though the other child survived the sale for 15

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

yeats, it did not appear that she did not acquiesce in the sale and receive her share of the proceeds. *Held,* that there was no election by the parties to take the land in its unconverted form, the delay in exercising the power of sale evidently being due to the character of the land, which was principally valuable for its timber, and the condition of the timber market in that section of the state.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 66–72; Dec. Dig. ☞22.]

In Equity. Suit by Joseph C. Meekins against the Branning Manufacturing Company and another. Bill dismissed.

Bill filed by plaintiff for an accounting of the value of timber cut from lands of which he alleges defendant, Branning Manufacturing Company, and himself, are tenants in common, heard upon the pleadings and an agreed statement of facts.

S. Brown Shepherd, of Raleigh, N. C., for plaintiff.

Pruden & Pruden, of Edenton, N. C., for defendant Branning Mfg. Co.

CONNOR, District Judge. Plaintiff alleges that defendant Branning Manufacturing Company and himself are, and have been since August 16, 1894, owners as tenants in common of the land described in his bill; plaintiff being the owner of one half, subject to the life estate of defendant Jeremiah C. Meekins, Jr., and defendant Branning Manufacturing Company, of the other half thereof; that the defendant has cut a large quantity of valuable timber from the land and, although demand has been made, refuses to account therefor. He also avers that defendant company holds a deed executed by Thomas and Joseph A. Spruill, executors of Benjamin Spruill, deceased, purporting to convey the entire tract, under which said company claims to be the sole owner of the land. He seeks to have the deed declared a cloud on his title, to the extent of one-half interest therein, and that defendant account for, and be decreed to pay to him, one-half the value of the timber cut from the land, and for partition thereof. Defendant Branning Manufacturing Company alleges that it is the sole owner of said land, admits that it has cut the timber therefrom, etc.

The parties submitted the cause upon the following agreed statement of facts:

(1) Benjamin Spruill died on April 30, 1880, leaving a last will and testament which was duly proven and recorded in Tyrrell county, N. C.

(2) That the said Benjamin Spruill left him surviving a widow, Nancy Spruill, and four children, to wit: Thomas Spruill, Joseph A. Spruill, Buena Vista McCleese (née Buena Vista Spruill), and Nancy Meekins (née Nancy Spruill).

(3) That Nancy Meekins, née Spruill, died January 12, 1887, leaving Jeremiah C. Meekins, Jr., her husband, and plaintiff Joseph C. Meekins, her only heir at law her surviving; the first being still living and defendant in this action.

That Joseph C. Meekins, plaintiff, was born on January 11, 1887 and was, at the beginning of this action, more than 25 years old, and

Buena Vista McCleese was 21 years old and under no disability for more than 10 years before her death in 1909, as hereinafter set forth and after the Branning Manufacturing Company had cut the timber aforesaid.

(5) That Buena Vista McCleese died in May, 1909, leaving a last will and testament by which she devised and bequeathed to the plaintiff, Joseph Charles Meekins, as follows:

"All my property, both real and personal, of which I may die seised and possessed or entitled to and by this I mean to give him everything I possess including money, notes, bonds and choses in action."

(6) That, on July 19, 1882, Thomas Spruill and Joseph Spruill, who had duly qualified as executors of the will of Benjamin Spruill, deceased, filed their account as executors in the office of the clerk of the superior court of Tyrrell county.

(7) That Thomas Spruill and Joseph A. Spruill, as executors aforesaid, on the 16th day of August, 1894, acting under the power contained in the will of Benjamin Spruill, deceased, undertook to convey the timber on the land, described in section 4 of the complaint, to the defendant the Branning Manufacturing Company, for the consideration of $4,800, paid them in cash, which said land was a part of the land included and described in the residuary clause of the will of Benjamin Spruill.

(8) That J. C. Meekins, Jr., first acted as guardian for Joseph C. Meekins, plaintiff, and later resigned, and J. C. Meekins, Sr., qualified and acted as such guardian and executed a receipt to J. C. Meekins, Jr., as guardian for the funds received by him, as will appear of record which is made a part hereof.

(9) That, while J. C. Meekins, Jr., was guardian, he received as guardian, from said executors of Benjamin Spruill, deceased, his ward's part of the amount received by them from the sale of the land aforesaid to the Branning Manufacturing Company, set out in section 7 above, to wit, $1,128, and on the 11th day of December, 1894, gave his receipt to the said executors.

(10) That the Branning Manufacturing Company, acting under and by authority of the deed to it aforesaid, began to cut the timber from the said land more than ten years before the bringing of this action and completed the cutting of the same more than three years before this action was brought and after the plaintiff, Joseph C. Meekins, reached the age of 21 years.

Benjamin Spruill, after devising to each of his children specific tracts of land, and bequeathing specific articles of personal property and giving his daughters money legacies, concludes his will with a residuary clause in the following words:

"My will and desire is that all the residue of my estate (if any), after taking out the devises and legacies above mentioned, shall be sold and the debts owing to me collected, and, if there should be any surplus over and above the payment of the debts, expenses and legacies, that such overplus, including the different amounts for which my life is insured shall be equally divided between my wife Nancy and four children, Thomas, Joseph, Buena Vista and Nancy, in equal portions, share and share alike, to them and each of them, their executors, administrators and assigns absolutely forever."

**[1]** It is a settled doctrine of equity that:

"Money directed to be employed in the purchase of land, and land directed to be sold and converted into money, are to be considered as that species of property into which they are directed to be converted; and this, in whatever manner the direction is given, whether by will, contract, etc." Fletcher v. Ashbruner, 1 L. C. Eq. (3 Am. Ed.) 659.

"In the case of wills, a conversion of real estate will be implied where there has been a blending of real and personal estate, so as to show that the testator intended to create a common fund out of both the real and personal estate, and to bequeath the fund as money." Fetter, Eq. 69; Craig v. Leslie, 3 Wheat. 56, 4 L. Ed. 460.

**[2, 3]** It would seem that the language of the residuary clause, read in the light of the entire will, comes clearly within this equitable doctrine. It will be noted that the testator makes to his wife and each of his four children devises and bequests of specific property constituting what he evidently regarded as an equitable division of his property, and, in the residuary clause, he directs that all the residue of his estate (if any), after taking out the devises and legacies mentioned, shall be sold and the debts owing him collected, and, if there should be any surplus over the payment of the debts, expenses and legacies, that such overplus, including the different amounts, for which his life is insured, shall be equally divided between his wife and four children, in equal portions, share and share alike, to them and each of them, their executors, administrators, and assigns absolutely forever. The authorities concur in holding that power is vested in the executors to make sale of such real property as was not specifically devised—the principle being that, where, by the terms of the will, a fund consisting of the proceeds of real and personal property is created, and its application, or distribution, directed, and no specific person is named to make the sale, the power is, by necessary implication, given to the executor. The word "estate" includes land. Foil v. Newsome, 138 N. C. 115, 50 S. E. 597, 3 Ann. Cas. 417.

"When a testator, in the disposition of his estate, imposes on his executor trusts to be executed, or duties to be performed, which require, for their execution or performances, an estate in his lands, or a power of sale, the executor will take, by implication, such an estate, or power as will enable him to execute the trusts or perform the duties devolved upon him." Vaughan v. Farmer, 90 N. C. 607; Powell v. Wood, 149 N. C. 235, 62 S. E. 1071.

**[4]** Assuming therefore that the terms of the residuary clause of the will worked a conversion "out and out," and that the power to make the sale vested in the executors, the question arises as to whether those who were entitled to the proceeds of the sale, under the will, took as devisees or legatees—whether such proceeds passed as realty or personalty. It is well settled that the conversion takes effect upon the death of the testator, and the property is then stamped with the character in which it passes to the beneficiary.

When the language used by the testator imposes the duty upon the executor to convert the land into money for the purpose of discharging the trusts imposed upon him, the rule is settled that a conversion takes place in wills as from the death of the testator. It logically follows therefore:

"That every person claiming property under an instrument directing its conversion must take it in the character which that instrument has impressed upon it, and its subsequent devolution and disposition will be governed by the rules applicable to that species of property." Shepherd, C. J., in Benbow v. Moore, 114 N. C. 263, 19 S. E. 156.

[5] It is also well settled that, when no title is devised to the executor, but a mere power to sell is given, the legal title descends to the heir until the power is executed, when the title of the purchaser relates to the death of the testator and those who, at that time, are entitled, will take the proceeds or, if dead, their personal representatives.

This principle, it would seem, was recognized by the testator, because we find that he gives the proceeds of the sale of the surplus of the estate to his wife and children, and their personal representatives. The facts stated in case of Benbow v. Moore, supra, and the well considered and sustained opinion of the late Chief Justice Shepherd, illustrates several of the principles involved here. There, land was, by will, probated during the year 1860, directed to be sold and a portion of the proceeds given to the defendant, then under coverture. For reasons appearing in the case, the sale was not made until 1868, the last payment on account of the purchase money paid to defendant and her husband 1874. At the date of the death of the testator, the husband was entitled jure mariti to the personal property of the wife. Prior to the sale of the land, and the payment of the purchase money, the Constitution of the state abolished the marital rights of the husband, in his wife's personal property. Upon the death of the husband, his widow, the defendant, sought to impress, upon the title to land purchased by the husband and paid for with the identical money received from the sale of the land under the provisions of the will, a resulting trust, because the purchase money was her property. The Supreme Court, enforcing the rule that the conversion took place at the death of the testator, and that the sale, when made, related back to that date, held that the money, although the law had been changed, belonged to him jure mariti; the Chief Justice, after a careful review of the authorities, saying:

"If, as we have seen, the principle of equitable conversion applies, there is no question but that the sale, when made, relates to the death of the testator."

In the light, both of reason and authority, therefore, it is clear that, upon the sale of the land, the widow and children of Benjamin A. Spruill took the proceeds as money, and that, upon the death of plaintiff's mother, Nancy Meekins, née Spruill, prior to the sale, her personal representative was entitled to the share to which she would have been entitled if living. Her husband, the defendant Jeremiah C. Meekins, Jr., was, under the statute of distributions in force in this state at that time, entitled to receive it as her administrator and hold it for his own use as sole distributee. Pell's Rev. c. 1, § 4; Wooten v. Wooten, 123 N. C. 219, 31 S. E. 491. It also follows that the share to which Buena Vista McCleese, née Spruill, was entitled, passed to her as personalty, and such interest as plaintiff was entitled to under her will must be sought through her personal representative. It does not appear that she did not receive her portion of the proceeds. She sur-

vived the date of the sale 15 years. It would seem, in the light of the fact that the share which the executors erroneously supposed belonged to the plaintiff was promptly paid to his guardian, it is not a violent presumption that she received the portion due her.

[6] Plaintiff's counsel, conceding the general equitable doctrine, contends that one of the limitations placed upon it, by the court of equity, is that when the purpose for which the executor is directed to convert the land into money fails, or it becomes unnecessary before the sale is made, the power to sell ceases and the title to the land remains in the heir, or in the devisee. This is undoubtedly true; many illustrative cases are cited by counsel. It will be observed that, in such cases, the discharge of the duty imposed upon the executor became either impossible or unnecessary because of conditions arising prior to the sale—as when land is directed to be sold, if necessary, to pay debts, and there be no debts existing at the death of the testator, or they be discharged by the proceeds of the personalty, as appears to have been the case here—but when the purpose of the sale only partially fails, or fails only as to one or more of the objects for which it is to be made, "the conversion must still be made in order to satisfy the purposes which remain effective." 3 Pom. Eq. 1171.

"If the purpose and object of the conversion fail altogether, or in part, then the whole estate in the one case and the part, in the other, is regarded as an estate, or interest undisposed of by the will; and as the devisor, in the event happening, has made no disposition of the estate, it takes the direction given it by the law, independently of the will, and goes to the heir at law. But, in the latter case, where there is only a partial failure, if the purpose of the will still require a sale and conversion, the heir takes the part thus undisposed of as money, and not as land, and on his death it will go to his personal representative. * * * It may be said to be established, beyond all controversy that, when the testator directs his land to be sold, for the purpose of division among his children and grandchildren, so long as this purpose of the sale and conversion exists, and is necessary to carry out the intent of the will, so long is the quality of personalty effectually stamped upon the estate in the hands of the executors; and courts are bound to consider it as subject to the laws of that species of property into which it was intended to be converted." Note to Ackroyd v. Smithson, 1 L. C. Eq. 836.

[7] The testator directs the disposition of the entire proceeds of the land and personalty which was to be sold by the executors, and they complied strictly with such direction; there was no failure of the purpose for which the conversion was directed; the payment of debts and legacies constituted only two of such purposes; the condition of his estate was probably understood by the testator; and he must have known that a portion and, as it turned out, the whole of the proceeds of the land, would be paid to his widow and children.

It is conceded that the lands sold by the executors was "valuable chiefly for timber purposes, are wild lands, and that the growth of timber thereon is irregular, large areas being thinly set with said timber trees, and other portions far removed from one another, being set with varied and valuable timber growth, and that the said described tracts of land are incapable and impossible of division or partition in kind."

In the light of well-known conditions existing in that section of the state, at the date of the will, it is not difficult to interpret the mind of the testator and ascertain his intention as expressed in his will,

in respect to these lands. There can be no serious doubt that he intended that they should be sold and their proceeds, together with the other portions of his estate, not specifically disposed of, be distributed as directed.

[8, 9] It is undoubtedly true, as contended by the plaintiff, that, notwithstanding the positive direction to sell, those to whom the proceeds were given were entitled, by any of the means recognized by the courts, to elect to take the land in its unconverted form and thereby, to that extent, defeat the intention of the testator. When this is done, it is said that the property is converted back to its original condition or the exercise of the right to elect works a reconversion.

"Where the whole beneficial interest in the money in the one case, or in the land in the other, belongs to the person for whose use it is given, a court of equity will not compel the trustee to execute the trust against the wishes of the cestui que trust, but will permit him to take the money or the land, if he elect to do so before the conversion has actually been made. * * * It is this election, and not the mere right to make it, which changes the character of the estate, so as to make it real or personal, at the will of the party entitled to the beneficial interest." Craig v. Leslie, 3 Wheat. 564, 4 L. Ed. 460.

So Judge Gibson says:

"This right of election must be exercised before the property is converted; and, until it be actually exercised, the property bears the same character, and remains subject to the same rules of transmission to representatives, as if the conversion were actually made." Allison v. Wilson's Ex'rs, 13 Serg. & R. (Pa.) 330.

This election may be accomplished by acts indicating a purpose to take the land, in its unconverted form, or by a demand upon the trustee, when vested in him, for a conveyance of the legal title, or by enjoining the trustee or executor from exercising the power of sale. The right to elect must be made by all of the beneficiaries, and all must be sui juris. It is well settled that an infant cannot do so. As said by Mr. Justice Hoke in Duckworth v. Jordan, 138 N. C. 525, 51 S. E. 111:

"This reconversion can be effected where all the parties, beneficially interested in the property, by some explicit and binding action direct that no actual conversion shall take place and elect to take the property in its original form. * * * All the interests must concur and all must be bound."

[10] It is manifest, for many reasons, that there was not, nor with the status of the parties could there be, any election by them to work a reconversion. Phifer v. Giles, 159 N. C. 142, 74 S. E. 921. On the contrary, two of the beneficial owners, the executors, exercised the power of sale; the husband of plaintiff's mother, then deceased, accepted, as his guardian, the share coming to him; the other daughter, Buena Vista, was then living, and survived the sale 15 years; there is no suggestion that she did not acquiesce in the sale and receive her share of the proceeds. The delay in exercising the power of sale is easily understood, in view of the character of the land, and the principal, if not sole, element of its value and the condition of the timber market in that section of the state. Whatever rights may have accrued to the beneficiary under the will to prevent the sale should have been asserted before the rights of an innocent purchaser for value attached.

Concluding that the sale was, in all respects, valid and passed the title to the defendant, it is unnecessary to discuss the other questions raised upon the record and argued by counsel. A decree will be entered dismissing the bill.

Dismissed.