From the facts properly presented it appears that the Bear Skin Cotton Mills, having become involved, an action was instituted to liquidate and distribute its assets in accordance with law, in which said action plaintiff, T. P. Dillon, was duly appointed receiver with authority and directions to sell the plant, etc.
Acting under said powers, the plaintiff has contracted to sell said plant — mills and some outlying property — to defendant at the price of $122,350, stipulating for the making of a good title, which said bid was duly reported to the court and confirmed at May Term, 1924, and title ordered to be made. Defendant company, admitting the contract, resist further compliance on the ground that the title offered is defective. The court, being of opinion with the plaintiff, entered judgment that defendants comply with the contract, from which said judgment defendant excepts and appeals. *Page 813 
The property in question was owned by H. M. Houston, who died in 1901, having made disposition of the same by his last will and testament in terms as follows:
"It is my will that all the remainder or residue of my property, of whatsoever nature or kind it may consist, shall be divided into three equal parts by my children, R. V. Houston, Ellen E. Fitzgerald and Martha M. Turner, if they can agree or if they prefer it to be done by others or if they cannot agree on a division, then they shall select three disinterested and intelligent freeholders who shall divide the said property as near as possible into three equal parts; one of which said parts I devise and bequeath to Martha M. Turner in trust for herself and children, R. F. Turner, Daisy Youngblood, Charlie Turner and Callie Turner, using so much thereof during her natural life as shall be necessary for her comfortable maintenance and support and the support and education of her children above named, and my daughter, Martha M. Turner, is authorized to give R. F. Turner, Daisy Youngblood, Charlie Turner and Callie Turner, as her judgment may dictate, such part or parts of the property devised and bequeathed in this item as will be for the interests and advancement of such child, provided the sums given shall not be more than the share to which the one advanced shall be entitled. If any of said children, R. F. Turner, Daisy Youngblood, Charlie Turner or Callie Turner should die without children, the share of such one shall be given to the survivors or survivor of them, and if any of said children should die leaving children, then the children of the deceased child shall be entitled to and receive such part of my estate herein devised or bequeathed as their parents would have been entitled to if living.
"I also devise and bequeath to R. V. Houston in trust one-third of the property divided by my children or freeholders as hereinbefore directed; to have and to hold the same for the use and benefit of himself and children, so that he shall use the rents, issues, profits and interests as they may be needed for the proper maintenance of himself and family; and for the purpose of advancing his children and starting them in life, he is authorized and empowered to advance and deliver to any or all of his children such money or property as he may deem proper for their best interest: Provided, in the advancement or delivery of money or property to any one of them he shall make an equitable and just division or distribution among his children so that there shall be no undue preference except that he may discriminate as to the time of making the advancements; and if any of R. V. Houston's children *Page 814 
shall die leaving children, the child or children of such a deceased child or children shall represent the deceased child or children and be entitled to such part of the property herein devised and bequeathed as such deceased child or children would have been entitled to receive if living."
Pursuant to the directions in this item of the will, the property embraced therein, consisting of both real and personal estate, choses in action, etc., was in 1902 divided by the three named children of the testator, and a written deed of partition of the same was formally executed and signed by the three and by L. A. W. Turner, the husband of M. M. Turner, and the land in controversy was embraced in the portion assigned to R. V. Houston, the son, who was also executor of the will.
No privy examination of M. M. Turner was taken as to the execution of this instrument of partition, but it appears that R. V. Houston and his children and assignees have been in the open and notorious possession of the property assigned to him, asserting ownership since the date of said partition.
The particular property in controversy here consisted of a tract of 3.05 acres, and was embraced in a deed made in December, 1905, by R. V. Houston, commissioner, conveying same to the Monroe Cotton Mills, the deed purporting to be made under a decree of the Superior Court for purposes of reinvestment, and this interest so conveyed has been passed by mesne conveyances to the Bear Skin Cotton Mills, and is the title offered by plaintiff as to that portion of the land bargained to defendant. Also a tract of thirty-five acres, part of the land assigned to R. V. Houston in the partition of H. M. Houston's property and after the death of R. V. Houston, in January, 1914, was divided by his children and grandchildren in court proceedings, the thirty-five acres in question being awarded and assigned to three of R. V. Houston's children, to wit, Margaret Payne, R. S. Houston and Octavia Houston, and later these three instituted proceedings for partition by sale; J. C. M. Vann being commissioner, who regularly sold and conveyed same to Charles F. Helms, and this interest has passed by proper mesne conveyances to the Bear Skin Mills, and is held and offered as a proper title by plaintiff in this cause.
It is objected that the title offered as to both of these tracts is defective by reason of the fact that M. M. Turner, one of the children of H. M. Houston, was a married woman at the time of the alleged partition and same is void as to her for want of her privy examination taken. But this partition was pursuant to a power to that end expressly conferred by the will of the father, and it is fully recognized here and elsewhere that in the execution of a power by a married woman, whether collateral or appendant and appurtenant or in gross, the joinder of the husband is not necessary unless it should be so *Page 815 
required by the instrument conferring the power. Taylor v. Eatman,92 N.C. 601-607; Ladd v. Ladd, 8th Howard, p. 10; 21 R. C. L., p. 791, title Powers, sec. 23; 31 Cyc., p. 1097. And as to limitations contained in a deed by which such a power is created, see Cameron v. Hicks,141 N.C. 26; Kirby v. Boyette, 116 N.C. 167;Hardy v. Holly, 84 N.C. 667.
The original partition, therefore, being valid and the property thereunder having been thereby allotted to R. V. Houston, the title to the 3.05 acres will depend upon the proper construction of the last clause, in item nine of the will, and the validity of the deed from R. V. Houston, commissioner, to the Monroe Cotton Mills, made in 1905, and passed by mesne conveyances to the Bear Skin Cotton Mills.
The property covered by this clause, as heretofore stated, consisted of both real and personal property, etc., and is herein devised to R. V. Houston in trust for himself and children, etc., with a limitation also in favor of the children of such as should die, and considering the terms and purpose of the devise and the broad and inclusive powers conferred upon the trustee, we are of opinion that whether the interest passed to the children be vested or contingent, the trustee had the implied power to make sale and conveyance of any of the property in furtherance of the trust imposed upon him, and the proceeds to be held by him subject to the limitations under which he received and held the fund. An interpretation that is fully supported by the well-considered case of Foil v. Newsome, 138 N.C. 115-123, and in which Associate Justice Connor, delivering the opinion, said:
"We are also of opinion that the trustee has by implication the power to sell land for the purpose of converting it into income-producing property. The usual rule adopted by the courts is to find, in language imposing upon an executor or trustee the duty of disposing of a mixed fund or property, an implied power to sell real estate to the end that he may discharge such duty." Ladd v. Ladd, supra, is in approval of the same position.
The executor and trustee, in our opinion, had the power to make the conveyance of 1905 without additional authority from a court proceeding, but there evidently being some doubt as to whether the devise to or for the children conveyed a vested or contingent interest, the trustee applied to the courts, all persons in interest appearing to have been made parties, and obtained a decree for sale of this property for reinvestment, and acting under that decree and the powers therein conferred, he conveyed this special property to the Monroe-Cotton Mills, and same has been passed by mesne conveyances to the Bear Skin Mills.
The papers in this proceeding are lost, and in the statement of case agreed it is termed a special proceeding. But the entry on the special *Page 816 
proceedings minute docket shows that it was a proceeding for sale for reinvestment; that all parties in interest were before the court, and the deed of conveyance presented in evidence contains recital that the decree was signed by the Honorable Garland S. Ferguson, judge of the Superior Court, riding the district, and we are fully justified in holding that the same is a Superior Court procedure, authorized by statute as a sale for reinvestment, and thereby giving assurance, if any were needed, that the title now offered is a good one. Pinnell v. Burroughs, 172 N.C. 182, andEverett v. Newton, 118 N.C. 919. Even if it was a special proceeding, as appellant contends, and though contingent interests are involved, the defect, if conceded, would seem to be cured by section 1745 of Revisal, validating all such sales, provided same shall not impair or destroy vested rights. The deed, then, of R. V. Houston as commissioner should be held valid, and in any event would avail to pass the property as being in the execution of powers existent under the terms of the will and in the due exercise of the same. Matthews v. Griffin, ante, 599; Taylor v. Eatman,92 N.C. 601.
As to the thirty-five acres that, as stated, also passed to R. V. Houston under the partition, and became subject to the second clause of item 9 of the will. There is some discussion as to whether the interest of the children under that item of the will is vested or contingent, and without definite decision on that subject we are inclined to the opinion that same is contingent and remained so until one or more of them should have been advanced by their father under the powers contained in the will; and, in any event, it is clear that they would all become vested at latest on the death of R. V. Houston. For a learned discussion of the principles applicable, see Witty v. Witty, 184 N.C. 375; and the question is also presented in Jenkins v. Lambeth, 172 N.C. 468.
From the facts stated it further appears that after the death of R. V. Houston, by proceedings in court duly instituted, partition was made of the property remaining and undisposed of among his children, and this thirty-five acres was allotted to three of his children, Margaret Payne, R. S. Houston and Octavia Houston, and they having instituted proceedings for the purpose, the same was regularly sold for division, and the title, made and executed pursuant to decrees made in the cause, has been passed to the Bear Skin Mills, and is also held and offered by its receiver.
It is stated that the papers in the partition proceedings have also been lost, but from the entry and decrees on the dockets and the county registry it appears that division of the lands was had in the special proceedings. That the partition was confirmed, and it is further stated in the facts that as a result of the proceedings the thirty-five acres were allotted to the three children as heretofore stated. There seems to be *Page 817 
no serious objection to the title to this part of the property, the exceptions offered amounting to no more than irregularities not substantially affecting the validity of the title. On the entire record we are of opinion that the questions have been correctly decided and the judgment of the court below is affirmed.
Judgment affirmed.