FIRST UNION NATIONAL BANK OF NORTH CAROLINA AND J. E. BROY-
HILL, TRUSTEES UNDER THE WILL OF T. H. BROYHILL, DECEASED v. R. T.
BROYHILL, OTIS L. BROYHILL, ETHEL BROYHILL STEVENS,
LILLIE BROYHILL BLACKWELDER, PATRICIA BROYHILL HUD-
SON, VIRGINIA BROYHILL COBB, LINDA BROYHILL HOGAN,
ROBERT J. STEVENS, JR., THOMAS H. STEVENS, CHARLES E.
STEVENS, MARY BLACKWELDER, BARBARA ANN BLACKWELD-
ER, THOMAS H. BROYHILL, II, OTIS L. BROYHILL, JR., MINOR,
DELL M. BROYHILL, MINOR, WILLIAM T. BROYHILL, MINOR, AND ALL
OTHER PERSONS WHOSE NAMES ARE UNKNOWN, IN BEING OR WHO MAY BE IN
BEING, INCLUDING UNBORN GRANDCHILDREN OF T. H. BROYHILL, DECEAS-
ED, WHO HAVE OR MAY HAVE ANY INTEREST IN THE ESTATE OF T. H. BROY-
HILL, DECEASED.

(Filed 16 December 1964.)

**1. Trusts § 6—**

A trustee does not have power to sell property of the trust estate unless
he is authorized to do so by the trust instrument, either expressly or by
implication from language necessarily requiring the exercise of such power
to accomplish the purpose of the trust or to the discharge of powers or
duties expressly conferred upon the trustee.

**2. Wills § 27—**

The intention of the testator as gathered from the entire instrument is
the primary object in interpreting a will, and must be given effect unless
contrary to some rule of law or at variance with public policy.

**3. Trusts § 6— Power of trustees to sell will not be inferred from
mere convenience or ease of administration.**

The will in question conferred upon the executor power to sell property
of the estate for specified purposes but conferred no specific power in the
trustees of the trust set up in the instrument to sell the assets of the trust
or to reinvest them. The trust directed the trustees to divide the assets of
the trust equally among the beneficiaries in kind as well as in value, with
limited power to invade the *corpus. Held:* The will does not confer upon
the trustees by implication power to sell the land, the mere fact that part
of the realty brought no income and that division of the estate would be
easier and the administration of the trust more convenient if the trustees
had the power of sale being insufficient for this purpose.

APPEAL by plaintiffs from *Huskins, J.,* March 1964 Session of
CALDWELL.

Action, pursuant to the Declaratory Judgment Act, G.S. 1-253, for
construction of a will with respect to trustees' alleged power of sale of
real estate.

T. H. Broyhill, late of Caldwell County, died 19 November 1955.
His will, dated 31 October 1955, was admitted to probate 25 November
1955. He was survived by widow, four children and twelve grand-
children.

Item VII of the will creates a trust, the pertinent portions of which are as follows (some parts summarized):

"I give, devise and bequeath all of the residue and remainder of my property, both real and personal . . . to my brother, J. E. Broyhill, and the Union National Bank of Lenoir, North Carolina (predecessor of First Union National Bank of North Carolina), as co-trustees, to be held and administered by said trustees for the following uses and purposes:

"(a)    The trustees shall divide said trust assets into four equal shares and trusts and in making such division, the trustees shall divide said assets equally among said four shares in kind as well as in value in so far as is practicable. One of said four equal shares shall be held for each of my children (naming them — all survived the testator and all are now living) . . . Each of said four equal shares of the trust assets shall be held, administered and treated by the trustees as a separate, distinct and independent trust . . .

"(b)    Each of my said four children shall receive the entire net income earned by his or her share or trust for and during the natural life of each such child. . . . In addition . . . the trustees, in their exclusive discretion, have the power to invade and pay out of the principal of each child's trust from the assets of such child's trust such amount or amounts as may be necessary to provide each such child with sufficient funds to provide for said child's reasonable maintenance and support and the health of each such child, provided, however, that said trustees shall take into consideration other resources which each such child shall have available to him or her and the income therefrom before invading the principal of the child's trust . . ." (The power to invade the principal is limited to $5000 or 5% of the principal — whichever is larger — in any one year.)

"(d)    Upon the death of each of my said four children the trustees shall continue to hold and administer the trust established herein for each said deceased child for the issue of said deceased child on a *per stirpes* basis. . . ." (Income is to be accumulated. Trustees may disburse to grandchildren who are minors such amounts as may be necessary for proper maintenance, support, health and education. Accumulated income to be paid to grandchild at age 21, and distribution of the trust fund ⅓ at age 25, ½ of balance at age 30, and remainder at age 35).

The trustees promptly qualified and entered upon their duties. Property of the value of $1,183,812.64 (value for estate tax purposes) came into the hands of the trustees — $545,842.11 personal property, $597,-725.52 real estate. The property was divided and four trusts created. According to 1958 inventories, each trust had property of the value of $295,953.16 — $146,521.78 personal property, $149,431.38 real estate. (Real estate was not actually divided; an undivided share in each tract was assigned to each trust.) According to the 1958 inventories the personal property in each trust consists of $9,870.22 cash, one-fourth interest in a promissory note of $764.13, and common stocks. The real estate consists of a one-eighth undivided interest in an office building, and interests in commercial and industrial sites, residential building lots, land on which a golf course is located, and mountain timber lands. There are 29 tracts. The annual income from all real estate is about $11,655; some of the real estate does not produce income.

Testator, prior to his death, made 8 sales of real estate in each of the years 1953, 1954 and 1955. The trustees have made 9 sales of real estate, with court approval, since testator's death. The remaining tracts are not individually susceptible of equitable partition because of the number of parties interested and the nature of the property, but the tracts could be allotted to claimants so as to make reasonably equal shares as to value.

Plaintiffs construe the provisions of the will as indicating an intention on the part of the testator that they, the trustees, have power and authority to sell and convey real estate without the necessity of court proceedings, supervision and approval. Defendants, children and grandchildren of testator, take a contrary view. Jury trial was waived, and the cause was submitted to the judge on the pleadings, stipulations, and documentary and parol evidence. It was adjudged that the "Trustees . . . have no power and authority, express or implied in said will, to sell the assets of the trust." Plaintiffs appeal.

*Kennedy, Covington, Lobdell & Hickman; Clarence W. Walker; and Marshall E. Cline for plaintiffs.*

*Fate J. Beal for defendants Mary Caroline Blackwelder and Barbara Ann Blackwelder.*

*W. T. Carpenter, Jr., Guardian ad Litem.*

MOORE, J. This will confers upon the trustees no express power of sale. This the plaintiffs concede. The question is whether such power is conferred by implication.

Applicable principles are succinctly stated in *Hall v. Wardwell*, 228 N.C. 562, 46 S.E. 2d 556, as follows:

"In the absence of authority conferred by the will, . . . a trustee under a testamentary trust has no authority to convey the fee in the land devised. But the power to convey need not be expressly conferred. It may be implied from the context of the will. 54 A.J., 349. It is purely a question of testamentary intent. *Tippett v. Tippett*, 7 A. (2d), 612; 3 Bogert, Trusts and Trustees, pt. 2,558.

"The implication may result from language necessarily requiring the exercise of the power, from the statement of purposes, or the conferring of other powers or duties to which the power of sale is essential. 54 A.J., 349."

Trustees assert that power of sale is implied in the instant case from the purposes of the trusts and the duties imposed on them as trustees, and they call attention to the following facts and the inferences they draw therefrom. Testator knew that a large part of the real estate produced no income. He bequeathed to his children, the primary objects of his bounty, income from the trust estate. He intended that property producing no income be sold and invested to the end that his children enjoy maximum income benefits. Authority is conferred to invade the *corpus* of the trust to meet the unanticipated needs of the children if income proves insufficient; this presupposes liquid assets readily available for distribution. There is only a small amount of cash, and less than half of the trust estate consists of stocks. At testator's death his youngest child was 43 years of age, his youngest grandchild 10. He knew that distributions of the trust assets must of necessity soon be made to the grandchildren. These assets will be distributed to twelve or more persons; each person might receive distributions at four different times under the terms of the trust; and distributions to the different beneficiaries will be made at different times because of the difference in their ages. Division and distribution of the land in kind is impractical. Sales pursuant to judicial proceedings are expensive, slow and difficult.

If the trustees had power of sale, to be exercised in accordance with their discretion, the administration of the trust would unquestionably be easier. But the matters of ease and simplicity of administration are not controlling on this appeal. Nor is our problem whether the real estate, or any portions thereof, may be sold. Courts of equity have general, inherent, exclusive supervisory jurisdiction over trusts and the administration thereof, and may authorize whatever is necessary to be done, including sales of land, to preserve a trust, effectuate its pur-

poses and protect the interests of the beneficiaries. *Trust Co. v. Ras-berry,* 226 N.C. 586, 39 S.E. 2d 601.

The question for determination is: Did testator intend to confer upon the trustees power of sale? "The intention of the testator as gathered from the entire instrument is the primary object in interpreting a will, and must be given effect unless contrary to some rule of law or at variance with public policy . . ." 4 Strong: N. C. Index, Wills, § 27, pp. 502-3, and cases cited therein.

From the inventory of the trust estate it is obvious that testator was successful in business and had wide experience in matters of property and investments. It is quite apparent that his will was drafted by a competent and skilled attorney. Testator was not inadvertent to the value and use of powers of sale. In Item V of the will he authorized and empowered the executors to sell the Mayview Manor property and gave explicit directions. Item IX conferred upon the executors the power "to sell all or any part of any property . . . , including real estate, at public or private sale for cash or on credit and on such terms and conditions as may seem expedient to them," for specified purposes. Yet, he conferred upon the trustees no power of sale, but provided that the trustees "divide said assets equally among the four shares *in kind* as well as in value." Power to invade the *corpus* is strictly limited. There is no direction that the trustees invest and reinvest the assets of the trust estate as was the case in *Hall v. Wardwell, supra; Bank v. Edwards,* 193 N.C. 118, 136 S.E. 342; *Powell v. Woodcock,* 149 N.C. 235, 62 S.E. 1071; *Foil v. Newsome,* 138 N.C. 115, 50 S.E. 597. The trustees are not given broad discretion with respect to the purposes of the trust and the invasion of the *corpus* as in *Hall v. Wardwell, supra; Dillon v. Cotton Mills,* 187 N.C. 812, 123 S.E. 89; *Ripley v. Armstrong,* 159 N.C. 158, 74 S.E. 961. The instant case is more nearly in accord with *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298; *Brinn v. Brinn,* 213 N.C. 282, 195 S.E. 793; *Jarrell v. Dyer,* 170 N.C. 177, 86 S.E. 1031; *Crudup v. Holding,* 118 N.C. 222, 24 S.E. 7. In our opinion no power of sale was conferred, expressly or by implication, upon the trustees by the will of T. H. Broyhill.

Affirmed.